2014-1777

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

PRAGMATUS TELECOM LLC,

Plaintiff-Appellee

v.

NEWEGG INC.,

Defendant-Appellant

Appeal from the United States District Court for the District of Delaware
in Case No. 12-1533-RGA, Judge Richard G. Andrews

## NON-CONFIDENTIAL BRIEF OF APPELLANT NEWEGG INC.

Kent. E. Baldauf, Jr.
Daniel H. Brean
Christian D. Ehret
THE WEBB LAW FIRM
One Gateway Center
420 Fort Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 471-8815

Edward R. Reines
WEIL GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000

Richard G. Frenkel
LATHAM & WATKINS
140 Scott Drive
Menlo Park, CA 94025
Telephone: (650) 463-3080

*Counsel for Appellant Newegg Inc.*

October 28, 2014

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Pragmatus Telecom v. Newegg, 2014-1777

<u>CERTIFICATE OF INTEREST FOR NEWEGG INC.</u>

Counsel for Newegg Inc. hereby certifies the following:

1.      The full name of every party or amicus represented by me is:

      Newegg Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

      Not applicable.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

      No publicly held company owns ten percent or more stock in Newegg Inc.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

      Kent E. Baldauf, Jr., The Webb Law Firm
      Daniel H. Brean, The Webb Law Firm
      Christian D. Ehret, The Webb Law Firm
      Dominick T. Gattuso, Proctor Heyman
      Edward R. Reines, Weil Gotshal & Manges
      Richard G. Frenkel, Latham & Watkins

Dated:  October 28, 2014

              /s/ Daniel H. Brean
              Daniel H. Brean
              *Counsel for Appellant Newegg Inc.*

# **TABLE OF CONTENTS**

STATEMENT OF RELATED CASES ................................................................. viii

JURISDICTIONAL STATEMENT .................................................................1

STATEMENT OF THE ISSUES.....................................................................1

STATEMENT OF THE CASE........................................................................1

   I.   Preliminary Statement ......................................................................1

   II.  Procedural History ...........................................................................2

   III.   Factual Background...........................................................................8

      A.   Pragmatus's Infringement Case Was Baseless ...........................9
      B.   Pragmatus Brought and Maintained this Lawsuit in Bad Faith ..............13

SUMMARY OF THE ARGUMENT ..............................................................16

STANDARD OF REVIEW ...........................................................................18

ARGUMENT ................................................................................................19

   I.   Newegg is the Prevailing Party ....................................................19

      A.   Pragmatus's Dismissal With Prejudice Changed the Legal Relationship Between Newegg and Pragmatus..........................20
      B.   Pragmatus's Dismissal With Prejudice Was Judicially Sanctioned ........23
         1.   Rule 41(a)(2) Dismissals Are Court-Ordered ......................24
         2.   Rule 41(a)(2) Dismissals Are Discretionary Actions ...........24

   II.  The District Court's Reasons for Denying Newegg Prevailing Party Status are Clearly Erroneous ..................................................27

      A.   Merits Determinations in the Pending Litigation Are Not Required For Prevailing Party Status ..........................................27
      B.   Third Party Conduct Can Make a Litigant a Prevailing Party ................31

C.    The Relatively Early Timing of the Dismissal Does Not Affect Newegg's Prevailing Party Status .............................................................34

III.    Deeming Newegg the Prevailing Party Promotes Sound Public Policy .....36

A.    The Prevailing Party Analysis Should Be Clear and Straightforward.....36
B.    It Should Not Be Difficult to Establish Prevailing Party Status and Be Able to Present One's Case for Fees........................................................38
C.    Treating Dismissed Defendants as Prevailing Parties Promotes Transparency and Justice in the Patent System ......................................40

CONCLUSION ......................................................................................................40

ADDENDUM ........................................................................................................42

## CONFIDENTIAL MATERIAL OMITTED

The material omitted on page 13 reflects the terms of settlement agreements that were designated as confidential by Pragmatus, and are subject to a protective order entered by the district court.

# TABLE OF AUTHORITIES

## Cases

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*,
　　532 U.S. 598 (2001) ..................................................................... *passim*

*Conrail v. Gottshall*,
　　512 U.S. 532 (1994) ............................................................................38

*Cushman v. Shinseki*,
　　576 F.3d 1290 (Fed. Cir. 2009) ..........................................................40

*Function Media, L.L.C. v. Google Inc.*,
　　708 F.3d 1310 (Fed. Cir. 2013) ...........................................................12

*Hertz Corp. v. Friend*,
　　559 U.S. 77 (2010) ..............................................................................37

*Highway Equip. Co. v. FECO, Ltd.*,
　　469 F.3d 1027 (Fed. Cir. 2006) .................................................. *passim*

*Inland Steel Co. v. LTV Steel Co.*,
　　364 F.3d 1318 (Fed. Cir. 2004) ............................................. 19, 22, 33

*LivePerson Inc. v. Pragmatus Telecom, LLC*,
　　No. 1:2012-cv-00147 (D. Del.) ..............................................................4

*Maher v. Gagne*,
　　448 U.S. 122 (1980) ......................................................................21, 28

*Mathews v. Eldridge*,

    424 U.S. 319 (1976) ............................................................39

*Moxie Software, Inc. v. Pragmatus Telecom, LLC*,

    No. 1:2012-cv-01993 (D. Del.) .............................................4

*Muniauction, Inc. v. Thomson Corporation*,

    532 F.3d 1318 (Fed. Cir. 2008) ...........................................12

*Net MoneyIN, Inc. v. VeriSign, Inc.*,

    545 F. 3d 1359 (Fed. Cir. 2008) ..........................................13

*Noah Sys., Inc. v. Intuit, Inc.*,

    675 F. 3d 1302 (Fed. Cir. 2012) ..........................................13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,

    134 S. Ct. 1749 (2014) ..........................................................7

*Power Mosfet Techs., L.L.C. v. Siemens AG*,

    378 F.3d 1396 (Fed. Cir. 2004) ............................. 22, 28, 34

*RFR Indus. v. Century Steps, Inc.*,

    477 F.3d 1348 (Fed. Cir. 2007) ........................ 19, 23, 24, 25

*Samsung Elecs. Co. v. Rambus Inc.*,

    440 F. Supp. 2d 495 (E.D. Va. July 18, 2006) ............. 25, 26

*Santa Fe v. Public Serv. Co.*,

    311 F.3d 1031 (10th Cir. 2002) ..........................................27

*Semtek Int'l, Inc. v. Lockheed Martin Corp.*,

   531 U.S. 497, 121 S. Ct. 1021 L. Ed. 2d 32 (2002) ............................................27

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,

   57 F.3d 1054 (Fed. Cir. 1995) ...............................................................................5

*Tennard v. Dretke*,

   542 U.S. 274 (2004) ............................................................................................38

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*,

   489 U.S. 782 (1989) ...................................................................... *passim*

*Voris v. Eikel*,

   346 U.S. 328 (1953) ............................................................................................38

Whittle v. Procter & Gamble,

   No. 1:06-cv-744, 2008 U.S. Dist. LEXIS 111440 (S.D. Ohio Nov. 14, 2008) ...35

**Statutes**

28 U.S.C. § 1295(a)(1) ............................................................................................1

28 U.S.C. § 1331 .....................................................................................................1

28 U.S.C. § 1338(a) .................................................................................................1

28 U.S.C. § 1920 ................................................................................................ 6, 22

28 U.S.C. § 2107(a) .................................................................................................1

35 U.S.C. § 112 .....................................................................................................12

35 U.S.C. § 285 .......................................................................................... *passim*

**Rules**

Federal Rule of Appellate Procedure 4 ..................................................................1

Federal Rule of Civil Procedure 41(a)(1) ...................................................... *passim*

Federal Rule of Civil Procedure 41(a)(2) ...................................................... *passim*

Federal Rule of Civil Procedure 54 ............................................................... 22, 40

Federal Rule of Civil Procedure 54(d)(1) ..............................................................22

**Other Authorities**

Gaia Bernstein, *The Rise of the End User in Patent Litigation*, __ Boston
    College L. Rev. ___ (forthcoming 2014), available at
    http://ssrn.com/abstract=2440914 ......................................................................15

## STATEMENT OF RELATED CASES

No other appeal in or from this same civil action was previously before this Court or any other court of appeals. Pragmatus Telecom is currently asserting the patents-in-suit in the following civil actions, all of which are pending in the District of Delaware:

*Pragmatus Telecom, LLC v. Aspect Software, Inc.* No. 1:2014-cv-00359;
*Pragmatus Telecom, LLC v. General Motors LLC et al.*, No. 1:2012-cv-01533;
*Pragmatus Telecom, LLC v. Genesys Telecomms. Labs., Inc.*, No. 1:2012-cv-01533;
*Pragmatus Telecom, LLC v. InContact, Inc.*, No. 1:2014-cv-00360;
*Pragmatus Telecom, LLC v. Interactive Intell., Inc.*, No. 1:2014-cv-00169;
*Pragmatus Telecom, LLC v. LiveOps Inc.*, No. 1:2014-cv-00361; and
*Pragmatus Telecom, LLC v. TouchCommerce Inc.*, No. 1:2014-cv-00056.

Newegg and its undersigned counsel are unaware of any other actions now pending in this or any other court that may directly affect or be directly affected by this Court's decision in the present appeal.

## JURISDICTIONAL STATEMENT

This is an appeal from the district court's final order, dated July 25, 2014, denying Newegg's motions for attorneys' fees and costs. The district court had original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Newegg filed a timely and proper notice of appeal under 28 U.S.C. § 2107(a) and Federal Rule of Appellate Procedure 4. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

Whether the district court erred by failing to find Newegg to be the prevailing party, where Pragmatus voluntarily moved to dismiss its infringement case against Newegg with prejudice under Federal Rule of Civil Procedure 41(a)(2).

## STATEMENT OF THE CASE

### I. PRELIMINARY STATEMENT

Pragmatus Telecom, LLC ("Pragmatus") brought this baseless case against Newegg Inc. ("Newegg") accusing Newegg of infringing patents alleged to cover "live chat" technology over the Internet. The core allegations related to Newegg's use of software provided to Newegg by Newegg's third party vendors. Newegg put up a robust defense and refused to pay a nuisance-value settlement fee to

1

Pragmatus, which nearly all of Newegg's co-defendants had done. Newegg also filed counterclaims seeking declaratory relief of non-infringement and invalidity.

When certain software vendors, in no way prompted by Newegg, later filed a declaratory judgment action against Pragmatus and ultimately took a license to Pragmatus's patents, Pragmatus filed a Rule 41(a)(2) motion to dismiss Newegg with prejudice. But Pragmatus dismissed Newegg not only to the extent Newegg used the software products now licensed by Pragmatus, but also as to "all other claims" against Newegg. Newegg thus obtained the comprehensive relief it desired (a take-nothing judgment) and Pragmatus obtained none of the relief sought in its Complaint from Newegg. Moreover, Pragmatus's dismissal with prejudice materially limits, and arguably eliminates, Pragmatus's ability to reassert its patents against Newegg.

When Newegg sought to recover its attorneys' and experts' fees, the district court denied Newegg's request for relief at the threshold for Newegg allegedly not being the "prevailing party" in the case. The district court concluded that because the dismissal was triggered by a third-party settlement, and involved no merits rulings in Newegg's favor by the district court, Newegg did not "prevail."

## II.    PROCEDURAL HISTORY

Pragmatus brought this action against Newegg in the Central District of California in December 2012, alleging that Newegg's online retail website

infringed Pragmatus's patents[1] by "provid[ing] live chat service over the Internet."
A1001-03. The infringement allegations in the Complaint were not limited to any
particular website or implementation of the accused "live chat services." *Id.*
Pragmatus's subsequent infringement contentions only accused www.newegg.com
of infringement. A1299-A1300, A1303-09 (naming and displaying screen shots
only of www.newegg.com).[2] Newegg also operates www.neweggbusiness.com,
which has a similar live chat customer service option. *See*
http://kb.neweggbusiness.com/ContactUs/ChatWithUs. The record shows that, for
the specific live chat functionality on www.newegg.com accused by Pragmatus in
its infringement contentions, Newegg used three different third party software and
service providers—Oracle, LivePerson, and Moxie. A1160-61.[3]

---

[1] The "Pragmatus patents," or the "patents-in-suit," are U.S. Patent Nos. 6,311,231
("the '231 Patent"); 6,668,286 ("the '286 Patent"); and 7,159,043 ("the '043
Patent"). A1001.

[2] While Pragmatus attempted to describe its contentions as only an "example" of
Newegg's infringement, and reserved the right to amend or supplement its
contentions (A1299-A1300), Local Patent Rule 3-1 in the Northern District of
California required "[e]ach [accused] product, device, and apparatus [to] be
identified by name or model number," and to be individually charted against the
claims. Under this standard, Pragmatus's contentions cannot be understood to
have accused anything other than www.newegg.com. Indeed, when Newegg later
responded to an interrogatory with respect to www.newegg.com only, Pragmatus
never objected or asked for additional information. A1160-61.

[3] As noted below, Oracle was licensed under the patents-in-suit since before this
lawsuit was filed. Because Newegg did not believe it was entitled to indemnity
from LivePerson or Moxie in this case, Newegg vigorously defended itself from
what it believed to be meritless infringement claims.

Newegg moved to transfer the case to the District of Delaware, where Pragmatus had already sued scores of other defendants for infringement of the same patents. A0014. While Newegg's transfer motion was pending, Newegg underwent considerable effort to analyze Pragmatus's ambiguous infringement contentions, develop claim construction positions, and perform a thorough invalidity search and prepare invalidity contentions, including detailed claim charts. Although Pragmatus had vigorously opposed Newegg's transfer motion, approximately two months before *Markman* briefing would begin, Pragmatus suddenly consented to transfer the case to Delaware—where the *Markman* proceedings were still nearly a year away. A1141-42.

After the case was transferred, discovery continued under the new schedule in Delaware. Meanwhile, likely in response to pressure by certain customers (other than Newegg) for indemnity and defense, two of Newegg's three live chat software and service providers—LivePerson and Moxie—sued Pragmatus seeking a declaratory judgment of non-infringement and invalidity of the patents-in-suit. A1136-37; *LivePerson Inc. v. Pragmatus Telecom, LLC*, No. 1:2012-cv-00147 (D. Del.); *Moxie Software, Inc. v. Pragmatus Telecom, LLC*, No. 1:2012-cv-01993 (D. Del.).

According to Pragmatus, Oracle was licensed under the patents-in-suit before this lawsuit was filed against Newegg, making Newegg's live chat usage

partially licensed from the outset of the case.  A1090.  When the *LivePerson* and *Moxie* cases were settled in February 2014, LivePerson and Moxie obtained licenses to the patents-in-suit such that Newegg's use of LivePerson and Moxie software was licensed.  A1090-91.  Pursuant to Fed. R. Civ. P. 41(a)(2), Pragmatus then moved the district court to dismiss the infringement claims "brought by Pragmatus" against Newegg that pertained to Newegg's use of LivePerson and Moxie with prejudice.  A1090-91.  Thus, Pragmatus sought to dismiss all claims asserted in the litigation that www.newegg.com infringed due to its use of Moxie and LivePerson.  Pragmatus went further than the LivePerson and Moxie settlements required, however, and went beyond the accused www.newegg.com website.  Pragmatus also moved to dismiss "*all other claims* against Newegg accruing prior to the date of this motion" with prejudice.  *Id.*

Because Newegg's current live chat functionality (provided by Oracle, A1160-61) was already licensed, and because Pragmatus no longer asserted *any* claims based on Newegg's past or current conduct, Pragmatus also moved to dismiss, without prejudice, Newegg's declaratory judgment counterclaims of non-infringement and invalidity.  A1090-91.  Although Newegg wanted to continue pursuing its declaratory judgment counterclaims against Pragmatus's baseless allegations, Pragmatus's motion extinguished the existing case or controversy between the parties and divested the district court of jurisdiction to hear Newegg's

counterclaims. *Id.* (citing *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1060 (Fed. Cir. 1995). Thus, Newegg could not oppose Pragmatus's motion to dismiss the entire case, including Newegg's counterclaims. *Id.*

The district court, exercising its discretion pursuant to Fed. R. Civ. P. 41(a)(2) to dispose of the motion "on terms that the court consider[ed] proper," dismissed all of Pragmatus's claims that had been brought relating to LivePerson and Moxie, as well as "all other claims" that had accrued against Newegg, with prejudice. A1093. Prior to the dismissal, the district court had not yet decided any claim construction or other substantive issues in the case.

Newegg subsequently moved for attorneys' fees pursuant to 35 U.S.C. § 285, and for recovery of its taxable costs pursuant to 28 U.S.C. § 1920. In support of its motions, Newegg contended that, having received a court-ordered dismissal with prejudice of the infringement claims, Newegg was the prevailing party. A1094-95; A1151-52 (citing *Highway Equip. Co. v. FECO, Ltd.,* 469 F.3d 1027, 1035 (Fed. Cir. 2006)). Newegg thus argued that it was presumptively entitled to recover its taxable costs. A1095.

Newegg argued that this case was "exceptional" under Section 285 based on the objective baselessness of Pragmatus's infringement claims, and based on various instances of misconduct by Pragmatus in discovery, all of which is discussed below. A1137-47. Additionally, Newegg demonstrated that

6

Pragmatus's intent in filing suit was not to resolve a legitimate claim of infringement, but to leverage the high cost and burden of patent litigation to coerce a nuisance-value settlement. A1136-37.

Newegg thus argued in its fee motion that Pragmatus's lawsuit was baseless, and was brought and prosecuted in bad faith, as was required to prove exceptionality under the then-existing law. A1149-50. However, Newegg also "question[ed] the propriety of requiring proof of both objective baselessness and bad faith," characterizing such a test as "inflexible, disproportionately burdensome on defendants, and . . . not permit[ting] the totality of the circumstances to be considered to award fees where justice requires in the sound discretion of the district court." A1149-50 (citing to the then-pending *Octane Fitness* certiorari petition).

While Newegg's motions for costs and fees were pending, the Supreme Court decided *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), which relaxed the standard for finding a case "exceptional" under Section 285. Newegg notified the district court of the *Octane Fitness* decision with a Notice of Subsequent Authority explaining the key and pertinent holdings of the decision, and argued that "for the same reasons expressed in [Newegg's fee motion], this case 'stands out from the others' in a manner that warrants a finding of exceptionality." A2129-30.

Following oral argument, the district court denied both of Newegg's motions for costs and fees, holding that Newegg was not a prevailing party. A0007-09. According to the district court, "it cannot be correct that a party can benefit from a bona fide license agreement, obtained after the litigation began, and claim to be the prevailing party, without a single substantial court decision that favors that party." A0007. The district court further explained:

> Here, Pragmatus licensed the suppliers of the technology, which led to downstream licensures for the users, *i.e.,* Newegg. Dismissal for a license obtained by a third party that protected Newegg does not settle a dispute in favor of Newegg. It is hard to see how it is any different in terms of prevailing party analysis than if Newegg had paid for the license itself. If there were a prevailing party, it would seem that it would more likely be Pragmatus, as Pragmatus filed suit because it believed that its patent was infringed, and as a result, in part because of the suit, Pragmatus was able to negotiate a license covering potential infringement of its asserted patent.

A0007. Because the district court concluded that Newegg did not meet the threshold "prevailing party" requirement for both fees and costs, the district court did not reach any of Newegg's substantive arguments in its fees and costs motions.

Newegg filed a timely notice of appeal. A0064. This appeal followed.

## III. FACTUAL BACKGROUND

Newegg is an online-only retailer that primarily sells computers, computer components and peripherals, and consumer electronics. Newegg conducts most of its business via www.newegg.com.

Pragmatus is a patent assertion entity that is exclusively in the business of patent enforcement and litigation. Its business follows the all-too-familiar model of using the burden and expense of patent litigation as leverage to extort settlement payments from end-user defendants rather than manufacturers or providers. According to PACER records, Pragmatus has filed 79 civil actions around the country alleging infringement of the patents-in-suit. The defendants are mostly online retailers, service providers, and manufacturers with a substantial online presence and deep pockets.

A.    Pragmatus's Infringement Case Was Baseless

Pragmatus never could have genuinely or reasonably believed that Newegg infringed its patents. The Pragmatus patents are directed to Voice over IP (VOIP) and telephone call-back services and, more specifically, a system that integrates telephone-based call centers with web pages to provide communications with customers over multiple contact channels (e.g., VOIP and telephone networks). *See, e.g.,* A0070 (Abstract of the '231 Patent). However, Newegg only offers live textual chat—it does not offer VOIP or telephone call-back services. Because Pragmatus's patents refer only to "call centers" and voice-based communications, and do not contemplate, let alone claim, live textual chat, they cannot be infringed by systems offering only live textual chat services. *See id*. The assertion of

Pragmatus's patents against entities like Newegg that offer only live textual chat is objectively baseless.

Pragmatus's infringement theories were also inconsistent and baseless for various other reasons. For example, the asserted independent claims clearly require, "upon selection of the remote help option, send[ing] a help request to the call center *identifying a contact channel through which the **user** of the customer terminal can be reached*."[4] *Id.*; A0087, A0106 (claim 9 of the '231 patent and claim 9 of the '286 patent).[5] Pragmatus contended that the "Contact us" section of the webpage shown in its contentions is "a remote help option" according to the asserted claims, and that the options of "live chat" and "call us" are contact channels "through which the user of the computer terminal can be reached." A1322. However, Newegg showed the district court that the links "LiveChat," "E-Mail," "Telephone," and "Write" presented on the accused "Contact us" customer service page (A1375-78) cannot meet this claim requirement for at least two reasons. First, although the claims require that, "upon selection of the remote help option, [the user's computer] sends a help request *to the call center* identifying a contact channel," none of these four methods of communication are identified in a message from the website user to Newegg's servers (the alleged "call center")

---

[4] All emphasis herein is added unless specified to the contrary.

[5] Similarly, claim 1 of the '043 patent requires the generation of a help request form including the customer's IP address upon selection of the remote help option. A0128.

when the website user clicks on the "Contact Us" link.  Instead, clicking on "Contact us" merely displays the various communication options to the user.  Second, the links for each communication method indicate how *Newegg* can be reached by the user, not how "the user of the customer terminal can be reached." *Id.*  Simply stated, the claims require that the user identify to Newegg how Newegg should contact the user, but the Newegg website works in precisely the opposite manner.

Newegg's website also indisputably lacks a "help request form," as recited in independent claim 1 of the '043 patent.  A0128.  Although the claim language requires that the "help request form" include "the customer IP address" and be forwarded to the call center, the "form" identified by Pragmatus in its infringement contentions is not used to input an IP address.  A1307.  Even under Pragmatus's proposed construction of "help request form" as "a form which is manually filled out by a customer or created automatically," Newegg could not have infringed because Newegg's webpages did not include forms into which an IP address could be manually or automatically input.  *Compare* A1432-33 (Pragmatus's proposed construction), *with* A1375 (showing the accused "LiveChat" webpage not having any form at all, let alone a form into which an IP address can be inserted).[6]

---

[6] Moreover, as Newegg explained to the district court, Pragmatus clearly failed to investigate Newegg's webpage during the accused periods of infringement and instead focused on a then-current, licensed implementation.  A1140-41 ("While

These contradictions and glaring omissions clearly establish the baselessness of Pragmatus's infringement theories. Despite Newegg's putting Pragmatus on notice of these and other facial deficiencies in Pragmatus's infringement contentions, Pragmatus pressed on with its case and indicated it would "stand[] by its contentions." A1139-41; A1368-70; A1372.

Additionally, Newegg demonstrated to the district court that the asserted claims of Pragmatus's patents, even if they covered Newegg's live textual chat functionality, were clearly invalid for obviousness[7] and for indefiniteness under 35 U.S.C. § 112, ¶ 6.[8] A1145-47. Again, despite the plain invalidity of its claims

---

Pragmatus accused Newegg of using unlicensed Moxie software, the screenshots in its infringement contentions illustrate an implementation of licensed Oracle software from 2013, not Moxie software.").

[7] Newegg presented evidence to the district court that Pragmatus's claims are obvious over various pre-Internet live customer service network systems. A1145-46; A1394-A1419; *Muniauction, Inc. v. Thomson Corporation*, 532 F.3d 1318, 1327 (Fed. Cir. 2008) (holding that merely "adapting existing electronic processes to incorporate modern internet and web browser technology" is obvious).

[8] Newegg demonstrated to the district court that Pragmatus asserted means-plus-function claims that recited computer-implemented functions, and were indefinite for the failure of the specifications to disclose supporting algorithms. A1146; *Function Media, L.L.C. v. Google Inc.,* 708 F.3d 1310, 1318 (Fed. Cir. 2013) (holding that a means-plus-function limitation corresponding to the mere disclosure of software implemented on a computer is invalid as indefinite without the disclosure of some corresponding algorithm that is executed by that computer); *Noah Sys., Inc. v. Intuit, Inc*., 675 F. 3d 1302, 1312 (Fed. Cir. 2012) ("We require that the specification 'disclose an algorithm for performing the claimed function'") (quoting *Net MoneyIN, Inc. v. VeriSign, Inc*., 545 F. 3d 1359, 1367 (Fed. Cir. 2008)); A1422-26 (Newegg's invalidity contentions regarding indefiniteness).

CONFIDENTIAL MATERIAL OMITTED

under well-settled precedent, Pragmatus pressed on against Newegg as long as Newegg would not settle.

### B.    Pragmatus Brought and Maintained this Lawsuit in Bad Faith

All of Pragmatus's lawsuits have been settled for far less than the cost of litigation defense for each defendant, thereby ensuring that the merits of Pragmatus's claims and the validity of its patents would not be tested in court. A1136-67; A1164-71 (LogMeIn Settlement); A1184-92 (Moxie Settlement); A1219-23 (VF Outdoor, Inc. and North Face Apparel Corp. settlements for [[          ]]); A1234-38 (CTD, Inc. settlement for [[          ]]).  Against the backdrop of Pragmatus's baseless infringement assertions and the defects of its patents, this pattern of broadly asserting its patents and accepting relatively small settlement payments indicates a desire not to truly litigate.  Rather, Pragmatus hoped that the burden of litigation defense would coerce defendants into paying nuisance-amount sums simply to make the cases go away.

Indeed, when faced with a determined defendant, Pragmatus took steps to avoid having to defend the merits of its case.  For example, when *Markman* proceedings in California were fast approaching, and after Newegg had endured the considerable burden and expense of preparing its invalidity contentions, Pragmatus abruptly withdrew its vigorous opposition to Newegg's motion to

transfer the case to Delaware, where *Markman* proceedings were still a year away. A1141-42.

Pragmatus showed essentially no interest in prosecuting this case. During the entire 14-month pendency of the litigation, on both coasts, the only discovery request served by Pragmatus was a single interrogatory. A1137; A1160-61. By contrast, for a period of more than six months Pragmatus stonewalled Newegg's discovery efforts, failing to produce material it *agreed* was owed to Newegg and repeatedly promised to produce, and never delivering it to Newegg. A1137-38; A1281-84; A1286-89; A1291-95. At the time Pragmatus moved to dismiss Newegg, Newegg had been in the process of moving to compel production, and a hearing date for the letter briefing had been set by the district court. *See* A1291-92. Pragmatus's overall conduct shows a lack of interest and confidence on the merits of its lawsuits, consistent with a case brought for an improper purpose rather than to resolve a legitimate infringement dispute.

Finally, Pragmatus's strategic decision to target end-users of the accused functionality, instead of technology suppliers, exacerbates the abusiveness of its behavior. Such end-users are not responsible for bringing the technology to market. End-users have little "stake" in the technology *per se* and, thus, have a particularly strong incentive to settle instead of defend themselves. They are generally at a disadvantage in terms of possessing the particular technological

sophistication and specific knowledge needed to best defend themselves.  *See* Gaia Bernstein, *The Rise of the End User in Patent Litigation*, __ BOSTON COLLEGE L. REV. ___ (forthcoming 2014), available at http://ssrn.com/abstract=2440914, at pp. 59-60 (explaining the unique equitable considerations presented by lawsuits against end users, and arguing that the procedural disadvantages to end users in patent litigation should weigh in favor of fee shifting where the end user is the prevailing party).  Targeting end-users is more lucrative, as it allows Pragmatus to extract nuisance settlements from far more defendants than if Pragmatus had instead targeted the few creators of the technology.  Had technology vendors like Moxie and LivePerson not stepped in to voluntarily challenge (and eventually license) Pragmatus's patents, Pragmatus would have been able to continue suing and collecting nuisance settlements from many more end-users.

To be clear, under Pragmatus's end-user assertion strategy virtually assured that software vendors will eventually become involved in the litigation because the vendors typically have indemnity obligations, as well as business interests, to defend such infringement allegations.  Suing the end-users thus has two functions.  First, as discussed above, end-users are more likely to quickly settle and pay a license fee because lawsuits like this are ancillary to their core businesses.  Second, to the extent the end-users resist settlement and seek help from the vendors (as many do), the vendors will likely pay to license the patents for themselves and

their customers.  Importantly, this latter function of suing end-users treats the end-users as pawns to coerce the vendors to the bargaining table, and exacerbates the abusiveness and impropriety of such patent assertion campaigns.  Here, this strategy was evidenced by Pragmatus's sole discovery request in this case, which was to ask only about any "Third Party" live chat providers of Newegg's.  A1160-61.  Tellingly, Pragmatus never inquired about any other internally-developed or internally-used pertinent functionality.

## SUMMARY OF THE ARGUMENT

Newegg, having been sued by Pragmatus based on frivolous assertions of infringement, and having vigorously defended itself in the case, was dismissed from the lawsuit with prejudice and without paying Pragmatus a dime.  Following the dismissal, which was ordered on a motion brought by Pragmatus under Rule 41(a)(2), Pragmatus cannot reassert the same infringement claims against Newegg.  This alone makes Newegg the prevailing party.

Yet the district court denied Newegg prevailing party status when deciding Newegg's motions for fees and costs, shutting out Newegg's claims of injustice before even reaching the merits.  According to the district court, because the dismissal was incident to third party settlement licenses (which licensed Newegg's use of the third party software), and not the result of the district court's own merits ruling, Newegg cannot be said to have "prevailed."  That reasoning controverts

clear and well settled precedent from the Supreme Court and this Court which have held that dismissals with prejudice pursuant to court orders confer prevailing party status, and that no merits determinations are required for prevailing party status to attach.

Furthermore, the dismissal Pragmatus sought went above and beyond what was required by the third party settlement licenses. In addition to dismissing claims of infringement directed to the now-licensed software, Pragmatus dismissed "all other claims" it had against Newegg. The only reason for Pragmatus to have done this is because it extinguished declaratory judgment jurisdiction over Newegg's counterclaims of non-infringement and invalidity. Rather than risk adverse judgments of non-infringement and invalidity, Pragmatus saw and seized an opportunity to get rid of Newegg—a thorn in the side of an otherwise successful nuisance litigation campaign. This effective concession of the merits of Newegg's case shows that even absent the third party settlements licensing much of the accused conduct, Newegg admittedly had the upper hand in the case.

There is good reason for the prevailing party standard not to be overly complicated or set an unduly high bar. Clear rules for determining prevailing party status promote predictability and uniformity. If district courts were to examine the extent to which a party "won" the case rather than the more straightforward procedural question of prevailing party status, it would waste judicial resources on

17

what should be an easy determination, instead of reaching the merits of cases. And if the test for prevailing party status requires some substantial victory on the merits, this threshold inquiry will become a formidable hurdle that will discourage litigants from bringing meritorious claims for fees and costs.

Perhaps most importantly, keeping the threshold for prevailing party status both low and clear, by relying on and reaffirming the precedent ignored by the district court, will prevent abusive plaintiffs from shielding their misconduct from fee and cost shifting simply by dismissing a determined defendant with prejudice. In nuisance patent litigation campaigns like the one being advanced by Pragmatus, abuses of the system generally go undetected and unsanctioned because the plaintiff leverages the cost and burden of patent litigation defense to coerce defendants into settling for a nuisance amount instead of defending themselves. Unless a dismissed litigation target like Newegg is deemed a prevailing party, the district courts' ability to police litigants' conduct will be severely hampered.

All of these reasons require that Newegg be deemed the prevailing party in this case, and that the case be remanded so that Newegg's fee and costs motions can be examined on the merits.

## STANDARD OF REVIEW

Whether a party is a prevailing party in the context of attorneys' fees and costs is a question reviewed without deference, applying the law of the Federal

Circuit. *RFR Indus. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007);

*Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004).

## ARGUMENT

### I.    NEWEGG IS THE PREVAILING PARTY

Being a "prevailing party" is not and should not be synonymous with winning a case on the merits in a judicially-decided victory.  Prevailing party status—the threshold requirement for seeking taxable costs and attorneys' fees—is not nearly so onerous to establish.  A party need only point to "some relief on the merits of his claim before he can be said to prevail." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989).  Put another way, the "floor" or "minimum" to establish prevailing party status is that some resolution of the dispute favorably alters the legal relationship of the parties.  *Id.*  A party does not have to succeed on every issue in the case, or even the central issue, to attain prevailing party status.  *Id.* at 790-91.

It is important not to confuse the *degree* of a prevailing party's success in the litigation with the threshold question of whether the party is a prevailing party. As the Supreme Court has explained, "[w]here such a change [in the legal relationship of the parties] has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award . . . not to the availability of a fee award *vel non*."  *Id.* at 793; *id.* at 791-92 ("If the plaintiff has succeeded on any

significant issue in litigation which achieved some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind.") (internal quotation marks omitted).

Generally, at the conclusion of litigation, for a party to be deemed a "prevailing party" there must only have been a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-05 (2001). This test has two elements: (1) there must be a change in the legal relationship of the parties; and (2) that change must be judicially sanctioned. In this case, Newegg satisfies both elements. Each element will now be addressed in turn.

A.    Pragmatus's Dismissal With Prejudice Changed the Legal
      Relationship Between Newegg and Pragmatus

A judicially-effectuated dismissal with prejudice renders the beneficiary of the dismissal a prevailing party. *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006). This is because such a dismissal is effectively the same as a consent decree. *See Buckhannon*, 532 U.S. at 604-05 (explaining that a consent decree has the same effect as a judgment on the merits in a party's favor in changing the legal relationship between the parties). Indeed, a plaintiff prevailing via settlement rather than litigation is still a prevailing party if that settlement results in a consent decree. *Maher v. Gagne*, 448 U.S. 122, 129 (1980) (holding that "[t]he fact that respondent prevailed through a settlement rather than through

litigation does not weaken her claim to fees"); *Buckhannon*, 532 U.S. at 604 n. 7 (explaining that private settlements incorporated into an order of dismissal can create prevailing parties).

In *Highway Equipment*, the patentee Highway Equipment granted the defendant FECO a covenant not to sue. 469 F.3d at 1030. Pursuant to Fed. R. Civ. P. 41(a)(2), the district court granted FECO's motion to dismiss Highway Equipment's infringement claims with prejudice. *Id.* at 1030-31. FECO was deemed a prevailing party for purposes of seeking attorneys' fees under Section 285.

In determining that FECO was a prevailing party, this Court first explained that "the dispositive issue is thus whether the dismissal with prejudice had sufficient judicial imprimatur to constitute a 'judicially sanctioned change in the legal relationship of the parties.'" *Id.* at 1034 (quoting *Buckhannon*, 532 U.S. at 605). This Court concluded that "as a matter of patent law, the dismissal with prejudice, based on the covenant and granted pursuant to the district court's discretion under Rule 41(a)(2), has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties." *Id.* at 1035.

This Court reached the same conclusion in the context of seeking taxable costs under 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d)(1) in *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1416 (Fed. Cir. 2004).

There, this Court held that prevailing party status attaches in cases where the district court grants a motion to dismiss with prejudice, reasoning that "[t]he dismissal of a claim with prejudice . . . is a judgment on the merits under the law of the Federal Circuit." *Id.* Because the defendant in *Power Mosfet* was dismissed with prejudice, this Court summarily held that the defendant was a prevailing party. *Id.* The prevailing party analysis does not differ for costs versus fees purposes. *See Highway Equip.*, 469 F.3d at 1035 (citing with approval *Power Mosfet*, and explaining that "we have treated the prevailing party issue under Rule 54 and 35 U.S.C. § 285 similarly"); *see also* A0004 (district court noting that "[w]hen determining whether a party is a prevailing party, the Federal Circuit has followed the Supreme Court's definition of a prevailing party as used in other fee-shifting statutes") (citing *Inland Steel*, 364 F.3d at 1320).

There can be no serious dispute in this case that the legal relationship between Pragmatus and Newegg changed in Newegg's favor when Pragmatus moved to dismiss its infringement claims with prejudice. Pragmatus sought various forms of relief in its complaint and was at least potentially eligible to receive such relief at the outset of this lawsuit—a judgment of infringement; a judgment of validity and enforceability; damages; and attorneys' fees. A1002-03. Pragmatus received none of this requested relief, but instead walked away from the

case empty handed.  By contrast, Newegg received the core relief it was seeking—that "Pragmatus shall take nothing by way of its Complaint." A1082-83.

Pragmatus's dismissal *with* prejudice limits Pragmatus's ability to bring the same claims against Newegg in the future.  For example, Pragmatus cannot seek past damages from Newegg that it sought in this case.  This limitation of Pragmatus's rights vis-a-vis Newegg undeniably changes the legal relationship between Pragmatus and Newegg.  *See Highway Equip.*, 469 F.3d at 1035.  As this Court has explained, a dismissal *without* prejudice, by contrast, "does not constitute a change in the legal relationship of the parties because the plaintiff is free to refile its action." *RFR Indus.*, 477 F.3d at 1353.  Here, not only can Pragmatus not reassert its patents against Newegg as to the Moxie and LivePerson software, but it cannot reassert the patents for any other past conduct by Newegg.  A1090-91.  In fact, Pragmatus cannot assert *any* claims against Newegg, patent-related or otherwise, that accrued prior to the dismissal motion.  *Id.*

B.    Pragmatus's Dismissal With Prejudice Was Judicially Sanctioned

The Supreme Court has explained that purely extra-litigation circumstances resulting in a case dismissal do not carry sufficient judicial imprimatur to confer prevailing party status. *Buckhannon*, 532 U.S. at 604-05 (holding that a voluntary change in conduct by a defendant "lacks the necessary judicial imprimatur on the change" to deem the plaintiff a prevailing party, even if the lawsuit was the catalyst

for the defendant's changed behavior). The event that causes the alteration between the parties' relationship must reflect some court involvement. *Id.* at 604. An order granting a motion to dismiss under Federal Rule of Civil Procedure 41(a)(2) carries with it sufficient judicial involvement to render the beneficiary of the dismissal a prevailing party. *See id.*; *Highway Equip.*, 469 F.3d at 1035.

### 1. *Rule 41(a)(2) Dismissals Are Court-Ordered*

A motion to dismiss under Rule 41(a)(2) can, by definition, only be effectuated "by court order," and only "on terms that the court considers proper" in its discretion. By contrast, Rule 41(a)(1)(A), by its very terms, provides for a self-effecting dismissal: "the plaintiff may dismiss an action *without a court order* by filing . . . a stipulation of dismissal signed by all parties who have appeared." Because a stipulated dismissal under Rule 41(a)(1)(A) does not require any action by the district court, it does not convey prevailing party status on the receiving party. *RFR Indus.*, 477 F.3d at 1353 ("[A] plaintiff's voluntary dismissal without prejudice pursuant to Rule 41(a)(1)(i) does not bestow 'prevailing party' status upon the defendant.").

### 2. *Rule 41(a)(2) Dismissals Are Discretionary Actions*

Rule 41(a)(2) only permits district courts to order dismissals "on terms that the court considers proper." This discretionary nature of Rule 41(a)(2) provides such dismissals with the necessary judicial imprimatur to confer prevailing party

status. Indeed, the patentee in *RFR Industries* was denied prevailing party status because it filed a notice of dismissal under Rule 41(a)(1) instead of seeking dismissal under Rule 41(a)(2). 477 F.3d at 1350. This Court explained that the defendant was not the prevailing party because voluntary dismissal pursuant to Rule 41(a)(1)(i) lacked the sufficient "judicial imprimatur" of a "judicially sanctioned change in the legal relationship of the parties" "*because it does not require a court order, nor does the court have the power or discretion to place any conditions on it.*" *Id.* at 1353.

Court-effectuated dismissals under Rule 41(a)(2) are closely analogous to consent decrees, which can confer prevailing party status under *Buckhannon*. *See Samsung Elecs. Co. v. Rambus Inc.*, 440 F. Supp. 2d 495, 508-09 (E.D. Va. July 18, 2006). In *Samsung*, following two covenants not to sue the defendant, the district court effected a dismissal with prejudice sought by motion under Rule 41(a)(2). *Id.* at 507. The court held that the dismissal was sufficient to grant prevailing party status because of the close similarities between Rule 41(a)(2) and consent decrees generally, and especially given the district court's inherent exercise of discretion when ordering such relief:

> A voluntary dismissal under Rule 41(a)(2) bears considerable similarity to a consent decree. Unlike a stipulated dismissal, to which the parties have an absolute right, a Rule 41(a)(2) dismissal is committed to the discretion of the district court. In exercising that discretion, district courts can impose terms and conditions on the plaintiff in order to obviate any prejudice to the defendant. Those

> terms and conditions materially alter the legal relationship between
> the parties in an effort to protect the defendant from prejudice as a
> result of the dismissal.

*Id.* at 509.  Thus, the court in *Samsung* concluded that "a dismissal with prejudice under Rule 41(a)(2) places sufficient judicial imprimatur on a change in legal relationships to confer prevailing party status."  *Id.* at 511.

Whether a Rule 41(a)(2) motion to dismiss is opposed or not, the act of ordering dismissal by the district court is treated as discretionary because the district court can impose appropriate conditions on the dismissal.  The court in *Samsung* explained the various types of conditions that a district court might impose on a Rule 41(a)(2) dismissal as follows:

> For example, the court can: (a) condition dismissal on the plaintiff's
> payment of costs; (b) impose a condition restricting the forum in
> which the plaintiff may refile the claim; (c) require the plaintiff to (or
> not to) use existing discovery in any refiled action; and (d) require the
> plaintiff to produce additional discovery. See 8 Moore's Federal
> Practice § 41.40(10). Of course, the ultimate condition that the court
> can impose on the voluntary dismissal is that the dismissal be with
> prejudice.

*Id.* at 509.  Even when a plaintiff walks away from its case, district courts should still consider whether appropriate restrictions should be in place because "a dismissal with prejudice might still have an adverse effect on the defendant or

other parties to the litigation." *Id.* n. 11 (citing *Santa Fe v. Public Serv. Co.*, 311 F.3d 1031, 1049 (10th Cir. 2002)).[9]

Here, because the district court's Rule 41(a)(2) order was a discretionary act (as opposed to an absolute right under a Rule 41(a)(1) stipulated dismissal), it carriers with it sufficient judicial imprimatur as to the changed legal relationship between Pragmatus and Newegg to render Newegg the prevailing party.

## II.    THE DISTRICT COURT'S REASONS FOR DENYING NEWEGG PREVAILING PARTY STATUS ARE CLEARLY ERRONEOUS

### A.    Merits Determinations in the Pending Litigation Are Not Required For Prevailing Party Status

According to the district court, "it cannot be correct that a party can benefit from a bona fide license agreement, obtained after the litigation began, and claim to be the prevailing party, without a single substantial court decision that favors that party." A0007. The district court reached this conclusion after observing that this Court's decisions finding prevailing parties generally involved merits determinations and/or cases that had proceeded much closer to trial. A0007 (noting that there were substantive findings of non-infringement in *Power Mosfet*

---

[9] Since a dismissal with prejudice might not always operate as a bar to refiling an action in a district court other than the one where the dismissal is filed, "there are myriad circumstances under which even a dismissal with prejudice would prejudice the defendant." *Id.* (citing *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2002) (stating that a dismissal with prejudice "will also ordinarily (though not always) have the consequence of not barring the claim from *other* courts, but its primary meaning relates to the dismissing court itself").

and that the case in *Highway Equipment* had proceeded past the final pre-trial conference).

However, the district court's categorical holding that prevailing party status cannot attach simply because the district court had "made no finding on any substantive issue in the case" lacks support in precedent or logic. A0006. The Supreme Court has been clear that consent decrees and court-effected settlements can confer prevailing party status—no substantive ruling or finding by the district court in a party's favor is required. *Buckhannon*, 532 U.S. at 604-05; *Maher*, 448 U.S. at 129. While cases like *Power Mosfet* and *Highway Equipment* may have included some substantive decisions by the district court before the dismissals occurred, the prevailing party status inquiry did not hinge on the existence of those merits determinations. Rather, this Court held, unequivocally in both instances, that the prevailing party status arose because the dismissals were with prejudice. *See Power Mosfet*, 378 F.3d at 1416 ("The dismissal of a claim with prejudice . . . is a judgment on the merits under the law of the Federal Circuit."); *Highway Equip.*, 469 F.3d at 1035 ("[A]s a matter of patent law, the dismissal with prejudice . . . has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties.").

Furthermore, requiring merits determinations for prevailing party status to arise would prevent Section 285 from rectifying misconduct that occurs in a case

that is dismissed relatively early.  Adopting such a bright-line rule would be manifestly unjust.  It is common practice in most district courts to wait until after claim construction and expert discovery to even consider ruling on dispositive matters such as summary judgment.  Defendants should not be required to endure protracted litigation and incur resultant expense before fee-shifting is even a threshold possibility.

Finally, to the extent the district court was, incorrectly, looking for some "victory" by Newegg, the full context of the dismissal should at least be considered.  The dismissal was much broader than would be mandated by a mere license to use Moxie and LivePerson software—it dismissed of "all other claims" that had accrued against Newegg, known or unknown at that time.  A1090.  The dismissal encompassed any claims against internally-developed live chat functionality, as well as claims against websites other than www.newegg.com, any other aspects of Newegg's business that Pragmatus might have accused of infringement, or, indeed, any "other claims" entirely unrelated to the patents.  For example, any claims that Pragmatus might have had against www.neweggbusiness.com, which was not accused in the case, were dismissed with prejudice.

Newegg thus received a far greater benefit from Pragmatus than the Moxie and LivePerson settlements required.  Pragmatus could have dismissed only its

claims that pertained to Moxie and LivePerson software, but it did not. This confirms that the dismissal was very likely motivated by the desire to avoid Newegg's counterclaims of non-infringement and invalidity by extinguishing them. Although the timing of the Moxie and LivePerson licenses may have triggered Pragmatus to dismiss the claims it actually asserted against Newegg, this underlying motive caused Pragmatus to jettison every other potential claim it had against Newegg, whether covered by the licenses or not.

At the time of the dismissal, Newegg was still vigorously defending itself and pursuing its non-infringement and invalidity counterclaims. Had Newegg continued to pursue, and subsequently prevailed on, those claims, it would jeopardize Pragmatus's patents and seriously frustrate Pragmatus's ability to extract nuisance settlements. For Pragmatus to go beyond a dismissal relating to LivePerson and Moxie software and include all other claims against Newegg makes no sense unless the point was to ensure that Newegg's counterclaims would lack a jurisdictional basis in the district court. Pragmatus pulled the rug out from under Newegg's counterclaims because it was the only way to make sure Newegg would not compromise Pragmatus's nuisance-value litigation campaign. In this sense, Pragmatus's dismissal should be viewed as confirming that Newegg had the winning arguments on the merits, and that the act of dismissal was a concession of victory to Newegg.

B.    <u>Third Party Conduct Can Make a Litigant a Prevailing Party</u>

In deciding Newegg's motion, the district court repeatedly expressed concern about deeming Newegg the "prevailing" party when the reason for Newegg's dismissal was a third party license to the patents taken by Newegg's software vendors.  A0007 ("Dismissal for a license obtained by a third party that protected Newegg does not settle a dispute in favor of Newegg.").  In the district court's view, unless the district court itself had made some affirmative ruling on the merits in Newegg's favor, Newegg could not be a prevailing party.  A0007; *see also* A2153 (district court commenting that "one of the things that I'm trying to think about is why, if somebody else gets you a license, you should be a prevailing party?").

The connection of LivePerson and Moxie to Newegg's dismissal is not germane to the analysis because the dismissal with prejudice, pursuant to the district court's order under Rule 41(a)(2), constituted "a judicially sanctioned change in the legal relationship of the parties," which is all that is required to establish prevailing party status.  *See Buckhannon*, 532 U.S. at 604-05; *supra* Part I.

But in the district court's view, "[i]t is hard to see how it is any different in terms of prevailing party analysis than if Newegg had paid for the license itself." A0007.  The district court overlooked that mutually-agreed settlements typically

31

avoid prevailing party issues because the parties almost universally agree that each shall bear their own fees and costs. Furthermore, dismissals pursuant to settlements can be, and typically are, effectuated via self-effecting stipulations under Rule 41(a)(1)(A), not by motion of one party under Rule 41(a)(2). Here, the district court fundamentally mistook Pragmatus's surrender with a truce.

The district court's erroneous perspective in this instance appears to stem from its focus on the fact that Pragmatus collected significant license fees from Newegg's vendors. *See* A0007. This caused the district court to think of *Pragmatus* as the prevailing party. *Id.* ("If there were a prevailing party, it would seem that it would more likely be Pragmatus, as Pragmatus filed suit because it believed that its patent was infringed, and as a result, in part because of the suit, Pragmatus was able to negotiate a license covering potential infringement of its asserted patent."). However, collecting settlement proceeds from a third party does not make a litigant a prevailing party. As to the dispute between Pragmatus and Newegg, such a conclusion overlooks the crucial fact that LivePerson and Moxie are not even "parties" to the litigation and did not indemnify Newegg. When looking at *this* civil action, Newegg is the only party who can be considered prevailing because Pragmatus obtained none of the relief it sought from Newegg, and Newegg escaped the litigation with a favorable judgment.

There is no prohibition against third party actions indirectly conferring prevailing party status on a litigant, however. A party may be deemed prevailing although it initially prevailed on the issue at bar in an entirely different forum. *See Inland Steel Co. v. LTV Steel co.*, 364 F.3d 1318, 1319-20 (Fed. Cir. 2004). In *Inland Steel*, a reexamination proceeding pending along with the infringement litigation resulted in a USPTO finding of invalidity. *Id.* The district court dismissed the case with prejudice, entering a judgment in favor of the defendant on the issue of infringement. *Id.* at 1320. According to this Court, the dismissal with prejudice altered the legal relationship of the parties and made the defendant a prevailing party, even though the initial victory for the defendant was in a different forum. *Id.* This Court further explained that the *res judicata* effect of the district court's dismissal evidenced the legal relationship change that led to the prevailing party conclusion. *Id.* at 1320-21.

Furthermore, again, here Pragmatus went much further than was required when it dismissed its case against Newegg. The scope of the dismissal relating to the third-party settlements is much narrower than the scope of the more general dispute between Newegg and Pragmatus. Newegg prevailed against Pragmatus not only by virtue of the third party licenses which provided Newegg with an indisputable license defense, but also via Newegg's formidable counterclaims that compelled Pragmatus to seek to get rid of Newegg as a defendant and keep the

33

weaknesses of Pragmatus's case concealed.  That additional scope of dismissal has nothing to do with the licenses and only relates to the dispute between Newegg and Pragmatus.

C.    The Relatively Early Timing of the Dismissal Does Not Affect Newegg's Prevailing Party Status

Although the district court emphasized the fact that Pragmatus dismissed Newegg while discovery was ongoing and before any merits determinations were made in the case (A0006), the timing of the dismissal with prejudice is not material to the prevailing party inquiry.  *See Tex. State Teachers Ass'n*, 489 U.S. at 791 ("Congress cannot have meant 'prevailing party' status to depend entirely on the timing of a fee request: A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either pendente lite or at the conclusion of the litigation."). Newegg is the prevailing party in this case, just as it would have been if such a dismissal occurred after claim construction or summary judgment in Newegg's favor, or on the eve of trial.  A plaintiff that walks away from its case and dismisses its claims with prejudice concedes victory to the defendant.  That is the reason this Court has routinely treated dismissals with prejudice as equivalent to merits determinations.  *See, e.g., Power Mosfet*, 378 F.3d at 1416; *Highway Equip.*, 469 F.3d at 1035.

*Whittle v. Procter & Gamble* involved a dismissal with prejudice before any merits rulings and well before trial.   No. 1:06-cv-744, 2008 U.S. Dist. LEXIS

34

111440 (S.D. Ohio Nov. 14, 2008). In *Whittle*, the defendant filed a motion for summary judgment of a patent infringement dispute. *Id.* at *2. Rather than oppose the motion for summary judgment, the patentee moved to dismiss the case with prejudice, which motion the court subsequently granted. *Id.* at *3. Because the dismissal was with prejudice, the court found there was a "judgment on the merits, and render[ed] the defendant a 'prevailing party'" for the purposes of the fee-shifting statute. *Id.* at *6-7.

As in *Whittle*, here Pragmatus effectively conceded that it could not prevail against Newegg and its dismissal with prejudice made Newegg a prevailing party. Although Pragmatus could potentially have disputed whether its licenses to Moxie and LivePerson extinguished any infringement by Newegg, Pragmatus immediately conceded the point and offered to dismiss Newegg based on the licenses. From a prevailing party perspective, the result would be no different if Newegg had presented a robust license defense that proved non-infringement on summary judgment. And the fact that Newegg was given a dismissal far greater in scope than that required by the LivePerson and Moxie licenses shows that Pragmatus was conceding more than just its inability to prove that the licensed third party platforms infringed.

**III.** **DEEMING NEWEGG THE PREVAILING PARTY PROMOTES SOUND PUBLIC POLICY**

A. The Threshold Prevailing Party Analysis Should Be Clear and Straightforward

The prevailing party inquiry has been characterized as a threshold determination, merely requiring a party to establish "some relief on the merits of his claim before he can be said to prevail." *Texas State Teachers Ass'n*, 489 U.S. at 791-92 ("If the plaintiff has succeeded on any significant issue in litigation which achieved some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind.") (internal quotation marks omitted). This Court should reaffirm that a dismissal with prejudice incident to a Rule 41(a)(2) motion meets this threshold requirement.

District courts should not get bogged down by the underlying reasons for Rule 41(a)(2) dismissals because such considerations do not reveal whether there has been a judicially sanctioned change in the parties' legal relationship. That analysis confuses the *degree* of a prevailing party's success in the litigation with the threshold question of whether the party is a prevailing party, and is improper. *Texas State Teachers Ass'n*, 489 U.S. at 793 ("Where such a change [in the legal relationship of the parties] has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award . . . not to the availability of a fee award *vel non*.").

36

Absent a clear and straightforward rule to deal with situations such as this case and pronounce defendants like Newegg prevailing parties, district courts will needlessly waste time and resources on what should be an easy threshold determination under *Buckhannon*, *Highway Equipment*, and other cases discussed above. As the Supreme Court has explained, "[c]lear rules . . . promote predictability, which is beneficial for both plaintiffs and defendants, and allow courts to focus their resources on the actual merits of the claims." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

The prevailing party threshold is effectively jurisdictional because it is a prerequisite for any fees or costs determination. In *Hertz*, the Supreme Court noted that "complex [jurisdictional] tests produce appeals and reversals, encourage gamesmanship, and . . . diminish the likelihood that results and settlements will reflect a claim's legal and factual merits. Judicial resources too are at stake." *Id.* at 94. Consistent with *Hertz*, this Court should reaffirm its rule from *Highway Equipment* and ensure that the threshold procedural question of prevailing party status is not made unduly complicated, as the district court did. Confirming that the beneficiary of a Rule 41(a)(2) dismissal with prejudice is a prevailing party will provide clear guidance to the district courts.

### B.    It Should Not Be Difficult to Establish the Threshold Showing of Prevailing Party Status and Be Able to Present a Case for Fees

The prevailing party inquiry has been referred to as having a "floor" or "minimum" of simply showing that some resolution of the dispute favorably alters the legal relationship of the parties. *Texas State Teachers Ass'n*, 489 U.S. at 792. This standard is not supposed to be onerous. If the threshold for establishing a prevailing party requires more than a favorable Rule 41(a)(2) dismissal with prejudice, it will prevent defendants from seeking relief to which they otherwise may be entitled and have a chilling effect on meritorious claims.

Section 285 is plainly intended to be remedial by shifting fees to restore justice when bad actors abuse the court system in patent cases. Such remedial statutes should be construed liberally to best ensure that their remedial purposes of are effectuated. *See, e.g., Conrail v. Gottshall*, 512 U.S. 532, 543 (1994) ("We have liberally construed [the Federal Employers' Liability Act] to further Congress' remedial goal."); *Voris v. Eikel*, 346 U.S. 328, 333 (1953) ("[The Longshoremen's and Harbor Workers' Compensation] Act must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results."); *Cf. Tennard v. Dretke*, 542 U.S. 274, 285 (2004) (holding that the threshold for admitting mitigating evidence in capital criminal cases must be low, and is equivalent to a mere showing of relevance so that the correct result on the merits can be reached). Here, a liberal view of prevailing parties under

Section 285 helps ensure that misconduct is reached and rectified by this vital remedial provision in the Patent Act.

It would be better for district courts to reach the merits on the much more difficult and nuanced questions such as whether a case is exceptional under Section 285, and to decide such issues on those merits rather than an unduly high threshold question that is more technical than substantive in nature. Motions for fees and costs like Newegg's should not be rejected at the outset by an improperly inflated prevailing party standard like that applied by the district court.

Such failure to reach the merits of claims to fees not only violates the spirit of Section 285 and the applicable precedent, but effectively denies litigants due process of law. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) ("The ultimate balance [of determining procedural safeguards to ensure due process] involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed . . . to assure fairness."). As the Supreme Court explained, "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases." *Id.* at 344. The district court's decision to deny Newegg's fee motion at the threshold, on groundless and incorrect procedural principles instead of the merits, denied Newegg due process and, as precedent, will likewise deny countless other victims of abusive litigation a meaningful opportunity to be heard. *See Cushman v. Shinseki*, 576 F.3d 1290,

1299-1300 (Fed. Cir. 2009) ("A fundamentally fair adjudication . . . is constitutionally required in all cases.").

      C.    <u>Treating Dismissed Defendants as Prevailing Parties Promotes Transparency and Justice in the Patent System</u>

In nuisance patent litigation campaigns like the one being advanced by Pragmatus, abuses of the system generally go undetected because the nature of the campaign is to leverage the cost and burden of patent litigation defense to coerce defendants into settling for a nuisance amount instead of defending themselves.

If Newegg is not deemed the prevailing party in this case, it would set a precedent such that abusive plaintiffs could shield any misconduct from the reach of Section 285 and Rule 54 by simply dismissing their cases with prejudice. That result would be unjust and nonsensical. A plaintiff that dismisses a defendant under Rule 41(a)(2) has conceded its case and turned that defendant into a prevailing party, and should have to pay a defendant's taxable costs and face any other consequences of the plaintiff's misconduct in the litigation.

## **CONCLUSION**

For the foregoing reasons, the judgment of the district court should be reversed and the case should be remanded for a determination of Newegg's taxable costs and whether this case is exceptional under Section 285.

Respectfully submitted,

Dated:  October 28, 2014          By:   /s/ Daniel H. Brean
                                        Kent E. Baldauf, Jr.
                                        Daniel H. Brean
                                        Christian D. Ehret
                                        THE WEBB LAW FIRM
                                        One Gateway Center
                                        420 Fort Duquesne Blvd.
                                        Suite 1200
                                        Pittsburgh, PA 15222
                                        Telephone:  (412) 471-8815

                                        Edward R. Reines
                                        WEIL GOTSHAL & MANGES LLP
                                        201 Redwood Shores Parkway
                                        Redwood Shores, CA 94065
                                        Telephone: (650) 802-3000

                                        Richard G. Frenkel
                                        LATHAM & WATKINS
                                        140 Scott Drive
                                        Menlo Park, CA 94025
                                        Telephone: (650) 463-3080

                                        *Counsel for Appellant Newegg Inc.*

## **ADDENDUM**

1.    Order dated July 25, 2014 denying Newegg's Motions for Costs and Attorneys' Fees (A0001)

2.    Memorandum Opinion dated July 25, 2014 denying Newegg's Motions for Costs and Attorneys' Fees (A0002-09)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**PRAGMATUS TELECOM LLC**

        Plaintiff;
                v.

**NEWEGG INC.,**

        Defendant.

Civil Action No. 12-1533-RGA

ORDER

Having reviewed the relevant papers and heard oral argument, for the reasons stated in

the accompanying Memorandum Opinion, IT IS ORDERED:

The Defendant's Motion for Costs (D.I. 230)  and Motion for Attorney's Fees (D.I. 231).

are **DENIED**.

Entered this 25‑th day of July, 2014.

_Richard G. Andrews_
United States District Judge

**A0001**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**PRAGMATUS TELECOM LLC,**

        Plaintiff;
            v.

**NEWEGG INC.,**                                    Civil Action No. 12-1533-RGA

        Defendant.

MEMORANDUM OPINION

Brian E. Farnan, Esq., Farnan LLP, Wilmington, DE; Michael J. Farnan, Esq., Farnan LLP, Wilmington, DE; M. Elizabeth Day, Esq., Feinberg Day Alberti & Thompson, Menlo Park, CA; Marc C. Belloli, Esq. (argued), Feinberg Day Alberti & Thompson, Menlo Park, CA; Clayton Thompson, Esq., Feinberg Day Alberti & Thompson, Menlo Park, CA, attorneys for the Plaintiff.


Dominick T. Gattuso, Esq., Proctor Heyman LLP, Wilmington, DE; Daniel H. Brean, Esq. (argued), The Webb Law Firm, Pittsburgh, PA; Kent E. Baldauf, Jr., Esq., The Webb Law Firm, Pittsburgh, PA, attorneys for the Defendant.


July 25, 2014

*Richard G. Andrews*

ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently before this Court for disposition is Defendant Newegg's Motion for costs (D.I. 230)[1] and Motion for Attorney's Fees (D.I. 231). This matter has been fully briefed (D.I. 295, 316, 317, 232, 293, 315, 336) and the Court heard oral argument on June 26, 2014 (D.I. 383). For the reasons set forth herein, the Defendant's motions are **DENIED**.

## PROCEDURAL BACKGROUND

Pragmatus brought this suit against Defendant Newegg on December 12, 2012 in the Central District of California. (2:12-cv-10629-MRW D.I. 1). The case was then transferred from the Central District of California to this Court on August 19, 2013. (2:12-cv-10629-MRW D.I. 47). On February 12, 2014, Pragmatus filed an unopposed Motion to Dismiss pursuant to Federal Rule of Civil Procedure 41(a)(2). (D.I. 210 at 1). The motion was granted that same day. (D.I. 212).

## ANALYSIS

Newegg seeks a fee award under 35 U.S.C. § 285 and the Court's inherent powers and costs pursuant to Federal Rule of Civil Procedure 54(d) and Local Rule 54.1. The Court will take these two issues in turn.

### 35 U.S.C. § 285

Newegg moves the Court to award it attorney's fees. (D.I. 231).

*Legal Standard*

The Patent Act provides that "in exceptional cases [the court] may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Thus, under the statute there are two basic requirements: (1) that the case is "exceptional" and (2) that the party seeking fees is a

---

[1] Unless specifically noted, all references to the docket refer to case 1:12-cv-01533-RGA.

2

A0003

"prevailing party." The Supreme Court recently defined an "exceptional" case as "simply one

that stands out from others with respect to the substantive strength of a party's litigating position

(considering both the governing law and the facts of the case) or the unreasonable manner in

which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct.

1749, 1756 (2014). When determining whether a party is a prevailing party, the Federal Circuit

has followed the Supreme Court's definition of a prevailing party as used in other fee-shifting

statutes. *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004). In *Inland

Steel*, the Federal Circuit held that district courts are to "apply the general principle that to be a

prevailing party, one must receive at least some relief on the merits, which alters . . . the legal

relationship of the parties." *Id.* (quotation marks omitted, ellipses in original).

        The Federal Circuit definition of a prevailing party derives from a series of Supreme

Court decisions. The term "prevailing party" is "a legal term of art." *Buckhannon Bd. & Care

Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). In *Hensley*,

the Supreme Court defined a prevailing party, for the purpose of attorney's fees shifting, to be a

party which "succeed[s] on any significant issue in litigation which achieves some of the benefit

the part[y] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (defining a

prevailing party in the context of a 42 U.S.C. § 1988 attorney fee shifting claim). The Supreme

Court then further clarified in *Hewitt* that, while is it "settled law . . . that relief need not be

judicially decreed in order to justify a fee award," there must be at least the "settling of some

dispute which affects the behavior of the defendant towards the plaintiff." *Hewitt v. Helms*, 482

U.S. 755, 761 (1987) (italics omitted). The Supreme Court further clarified its ruling in *Farrar*

by holding that the relief must actually affect the parties' behavior. *Farrar v. Hobby*, 506 U.S.

103, 111 (1992). Furthermore, the Court emphasized that "the touchstone of the prevailing party

3

inquiry must be the material alteration of the legal relationship of the parties." *Id.* at 111

(brackets omitted); *see also Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012). Independent of what

relief is received, it "must directly benefit [the party] at the time of the judgment or the

settlement." *Id.* However, in *Buckhannon* the Supreme Court made clear that even "nominal

damages suffices under this test." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of*

*Health & Human Res.,* 532 U.S. 598, 604 (2001) (citing *Farrar*, 506 U.S. 103). Finally, the

Supreme Court has made clear that:

> We have only awarded attorney's fees where the plaintiff has received a judgment
> on the merits or obtained a court-ordered consent decree — we have not awarded
> attorney's fees where the plaintiff has secured the reversal of a directed verdict or
> acquired a judicial pronouncement that the defendant has violated the Constitution
> unaccompanied by judicial relief. Never have we awarded attorney's fees for a
> nonjudicial alteration of actual circumstances.

*Buckhannon*, 532 U.S. 598, 605-06 (2001). In sum, precedent from both the Supreme Court and

the Federal Circuit make clear that for a party to be a *prevailing party*, that party must win a

dispute within the case in favor of it that materially alters the legal relationship between the

parties at the time of the judgment.

### Discussion

The Plaintiff contends that Newegg is not a prevailing party because, "The dismissal here

did not have sufficient judicial imprimatur because the Court dismissed the case based solely on

the fact that settlements by Newegg's suppliers had made Newegg's use of the infringing

technology licensed after the case had begun." (D.I. 293 at 17). Furthermore, the Plaintiff

argues that, "There was no judicially sanctioned change in the legal relationship of the parties

sufficient to make Newegg a prevailing party." *Id.* Conversely, Newegg contends that it is the

prevailing party because "a dismissal with prejudice is undisputedly favorable relief that removes

all liability from Newegg for any infringement of Pragmatus's patents." (D.I. 315 at 5).

4

**A0005**

Specifically, Newegg argues it is the prevailing party both because the dismissal was a result of

Pragmatus's motion, not a joint stipulation, and because the motion to dismiss included a

covenant not to sue. *Id.* at 6.

The Federal Circuit has determined whether there is a prevailing party in several

instances. In *Power Mosefet*, the Court determined that when a party voluntarily dismisses its

case with prejudice against the defendant, after it had been determined that the patent-in-suit was

not infringed and had not been proven invalid or unenforceable, the defendant is the prevailing

party. *Power Mosfet Technologies, L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406, 1416 (Fed. Cir.

2004). Similarly, in *Highway Equipment*, not only had the case progressed "through the final

pretrial conference to the eve of trial," but the District Court had found that the patentee had

provided no explanation as to why it had decided to dismiss the case with prejudice on such a

late date. *Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006). The

Federal Circuit held that, "as a matter of patent law, the dismissal with prejudice, based on the

covenant and granted pursuant to the district court's discretion under Rule 41(a)(2), has the

necessary judicial imprimatur to constitute a judicially sanctioned change in the legal

relationship of the parties" sufficient to award fees under 35 U.S.C. § 285. *Id.*

This case is unlike *Power Mosefet* and *Highway Equip.* I have made no finding regarding

any substantive issue in the case. I have not construed any terms, resolved a contested motion to

dismiss, or resolved any motions for summary judgment. Discovery was ongoing when the case

was dismissed. Furthermore, unlike in *Highway Equip.*, where there was no reason given for the

motion to dismiss, here the unopposed motion to dismiss states that it is a result of a licensing

agreement with Moxie Software, Inc. and LivePerson, Inc., the two companies that provide the

live chat software to Newegg. (D.I. 210 at 1). Furthermore, no evidence has been provided to

**A0006**

the Court that the licenses provided to Moxie and Liveperson were token licenses. Instead, Pragmatus has provided unopposed evidence that the each license was for a non-trivial payment. (D.I. 294-1; D.I. 294-2).

Finally, it cannot be correct that a party can benefit from a bona fide license agreement, obtained after the litigation began, and claim to be the prevailing party, without a single substantial court decision that favors that party. The Supreme Court has made clear that there must be a dispute that was settled in favor of the party seeking to be declared the prevailing party that materially alters the legal relationship between the parties. Here, Pragmatus licensed the suppliers of the technology, which led to downstream licensures for the users, *i.e.*, Newegg. Dismissal for a license obtained by a third party that protected Newegg does not settle a dispute in favor of Newegg. It is hard to see how it is any different in terms of prevailing party analysis than if Newegg had paid for the license itself. If there were a prevailing party, it would seem that it would more likely be Pragmatus, as Pragmatus filed suit because it believed that its patent was infringed, and as a result, in part because of the suit, Pragmatus was able to negotiate a license covering potential infringement of its asserted patent.

Therefore, Newegg is not a prevailing party under 35 U.S.C. §285. Thus Defendant's motion for fees under the aforementioned statute is denied.

Court's Inherent Power

Newegg moves the Court to award it attorney's fees under its inherent powers. (D.I. 231).

*Legal Standard*

"It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a

6

**A0007**

Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501

U.S. 32, 43 (1991) (internal quotation marks and brackets omitted). Therefore, courts are

"vested, by their very creation, with power to impose silence, respect, and decorum, in their

presence, and submission to their lawful mandates." *Id.* The court's "power reaches both

conduct before the court and that beyond the court's confines" as the underlying purpose of the

Court's power is to stem "disobedience to the orders of the Judiciary, regardless of whether such

disobedience interfered with the conduct of trial." *Id.* at 44 (internal brackets and quotation

marks omitted).

> The Third Circuit has held that

> Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of a district court's discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. Thus, a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified. In exercising its discretion under its inherent powers, the court should be guided by the same considerations that guide it in the imposition of sanctions under the Federal Rules. First, the court must consider the conduct at issue and explain why the conduct warrants sanction. If an attorney, rather than a client, is at fault, the sanction should ordinarily target the culpable attorney.

*Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994).

> *Discussion*

The Defendant's inherent powers argument was sketchily briefed – containing a total of

six lines in Defendant's Opening Brief – did not cite Third Circuit precedent, and was not raised

during oral argument. Therefore, the argument is waived.

> Motion for Costs

The Defendant moves the Court to award it costs. (D.I. 230).

> *Legal Standard*

7

**A0008**

"Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the *prevailing* party." FED. R. CIV. P. 54(d)(1) (emphasis added). Furthermore, Local Rule 54.1(a)(1) reads, "Unless otherwise ordered by the Court, the *prevailing* party shall be entitled to costs." (emphasis added).

*Discussion*

An explicit requirement of both FED. R. CIV. P. 54(d)(1) and Local Rule 54.1(a)(1) is that for a party to be awarded costs it must be a "prevailing party." As discussed above, here there is no prevailing party. Therefore the Court denies Newegg's motion for costs.

## CONCLUSION

For the reasons above, the Court will **DENY** the Defendant's Motion for Costs (D.I. 230) and Motion for Attorney's Fees (D.I. 231). An appropriate order will be entered.

8

**A0009**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on October 28, 2014, copies of the foregoing Brief of Defendant-Appellant Newegg Inc. was served on counsel for Plaintiff-Appellee Pragmatus Telecom, LLC via the Court's ECF system and via electronic mail upon the following:

> Marc Belloli
> Elizabeth Day
> FEINBERG DAY ALBERTI & THOMPSON LLP
> 1600 El Camino Real
> Suite 280
> Menlo Park, CA 94025
> Email: mbelloli@feinday.com
>
> Thomas Richard Burns, Jr.
> ADDUCI, MASTRIANI & SCHAUMBERG, LLP
> 12th Floor
> 1133 Connecticut Avenue, NW
> Washington, DC 20036
> Email: burns@adduci.com
>
> Brian E. Farnan
> FARNAN LLP
> 12th Floor
> 919 North Market Street
> Wilmington, DE 19801
> Email: bfarnan@farnanlaw.com

/s/ Daniel H. Brean
Daniel H. Brean
*Counsel for Appellant Newegg Inc.*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the body of this brief, beginning with the Jurisdictional Statement on page 1, and ending with the last line of the conclusion on page 40, including headings, footnotes, and quotations, is all in Times New Roman 14-point font and contains 9,304 words, in compliance with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).


/s/ Daniel H. Brean
Daniel H. Brean
*Counsel for Appellant Newegg Inc.*