2014-1777

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

## PRAGMATUS TELECOM LLC,

*Plaintiff-Appellee,*

v.

## NEWEGG INC.,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the District of Delaware
In Case No. 1:12-cv-01533-RGA, Judge Richard G. Andrews

---

### NONCONFIDENTIAL BRIEF OF
### PLAINTIFF-APPELLEE PRAGMATUS TELECOM LLC

---

Ian N. Feinberg
Elizabeth Day
Clayton Thompson
Marc Belloli
FEINBERG DAY ALBERTI &
   THOMPSON, LLP
1600 El Camino Real, Suite 280
Menlo Park, CA 94025
Tel: 650.618.4360
Fax: 650.618.4368

Thomas R. Burns, Jr.
ADDUCI, MASTRIANI, &
   SCHAUMBERG, LLP
1133 Connecticut Ave., N.W.,
   12th Floor
Washington, DC 20036
Tel: 202.467.6300
Fax: 202.466.2006

*Attorneys for Plaintiff-Appellee*
*Pragmatus Telecom LLC*

Date: December 11, 2014

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Pragmatus Telecom LLC _____ v. Newegg Inc. _____

No. 14-1777 _____

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Appellee Pragmatus _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Pragmatus Telecom LLC

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

N/A

_____

4.  ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Marc Belloli, Elizabeth Day, Ian Feinberg, Clayton W. Thompson - Feinberg Day Alberti & Thompson LLP; Thomas R. Burns Jr. - Adduci, Mastriani & Schaumberg, LLP

_____

12/09/14 _____              /s/ Thomas R. Burns, Jr. _____
         Date                                    Signature of counsel

                                           Thomas R. Burns, Jr. _____
                                            Printed name of counsel

Please Note: All questions must be answered

cc: Counsel of Record _____

# TABLE OF CONTENTS

I.      STATEMENT OF RELATED CASES............................................................1

II.     STATEMENT OF THE ISSUES ..................................................................1

III.    STATEMENT OF the CASE ........................................................................2

IV.     STATEMENT OF FACTS ...........................................................................4

      A.      Statement of Actual Facts ................................................................4

      B.      Statement Regarding Newegg's Purported Facts That Are
           Untrue, Unsupported, Unfounded and/or Not of Record
           and Introduced for the First Time on Appeal........................................7

V.      SUMMARY OF THE ARGUMENT ...........................................................16

VI.     ARGUMENT.............................................................................................18

      A.      Standard of Review ........................................................................18

      B.      The District Court Properly Found That  Newegg Was
           Not a "Prevailing Party" Because the  Dismissal Resulted
           from Infringement Claims That Were  Exhausted by
           License Agreements with Newegg's Suppliers...................................18

      C.      Newegg's Argument That It "Prevailed" on  Claims
           Other Than Those That Were Exhausted Was  Waived
           and Is Not Supported by Any Evidence of Record.............................28

           1.      Regardless of Whether Newegg's "Other Claims"
                 Theory Was Waived, It Fails Substantively Due to
                 Lack of Record Evidence and No Showing That
                 the Prevailing Party Standard Was Met with
                 Respect to These Imaginary Claims .........................................32

      D.      Newegg's Argument That Pragmatus Did Not Have to
           Concede Exhaustion (Br. at 35) Is Incorrect and Belied
           by Record Evidence and the District Court's Finding .......................33

      E.      Newegg's Other Arguments (Br. at 27-35) Lack Merit.....................35

F.    Contrary to Newegg's Assertion, Public Policy Supports
a Finding That Newegg Has Not Prevailed Because Such
a Finding Would Deter Settlement and Licensing of
Suppliers ............................................................................................36

VII.   CONCLUSION............................................................................................40

## CONFIDENTIAL MATERIAL OMITTED

The material omitted on pages 5-6 and 10 reflects the terms of settlement

agreements that are designated as confidential and are subject to a protective order

entered by the district court.

# TABLE OF AUTHORITIES

**Cases**

*Akers v. Nicholson*,
  409 F.3d 1356 (Fed. Cir. 2005) ................................................................... passim

*Buckhannon Bd. & Care Home, Inc.*
  *v. W. Va. Dept. of Health & Human Res.*,
  532 U.S. 598 (2001) ........................................................ 19, 26, 32, 35

*Exigent Tech., Inc. v. Atrana Solutions, Inc.*,
  442 F.3d 1301 (Fed. Cir. 2006) ................................................... 19, 23

*Hemstreet v. Spiegel, Inc.*,
  851 F.2d 348 (Fed. Cir. 1988) ...............................................................37

*Highway Equip. Co., Inc. v. FECO, Ltd.*,
   469 F.3d 1027 (Fed. Cir. 2006) ............................................... 23, 26, 27

*Inland Steel Co. v. LTV Steel Co.*,
  364 F.3d 1318 (Fed. Cir. 2004) ................................................... 19, 23

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
  378 F.3d 1396 (Fed. Cir. 2004) ...............................................................24

*Quanta Computer, Inc. v. LG Elecs. Inc.*,
  533 U.S. 617 (2008) ...............................................................................34

*Samsung Elecs. Co. v. Rambus Inc.*,
  440 F.Supp. 2d 495 (E.D. Va. July 18, 2006) ............................................ 26, 27

*Shum v. Intel Corp.*,
  629 F.3d 1360 (Fed. Cir. 2010) ............................................... 21, 22, 35

*SkinMedica, Inc. v. Histogen Inc.*,
  727 F.3d 1187 (Fed. Cir. 2013) ................................................... 14, 29

**Statutes**

35 U.S.C. § 271(a) ...............................................................................13

iii

## I.    STATEMENT OF RELATED CASES

No other appeal in or from this same civil action was previously before this Court or any other court of appeals.  Pragmatus Telecom is currently asserting the patents-in-suit in the following civil actions, all of which are pending in the District of Delaware:

*Pragmatus Telecom, LLC v. Aspect Software, Inc.* No. 1:2014-cv-00359;

*Pragmatus Telecom, LLC v. Genesys Telecomms. Labs., Inc.*, No. 1:2012-cv-01533;

*Pragmatus Telecom, LLC v. InContact, Inc.*, No. 1:2014-cv-00360;

*Pragmatus Telecom, LLC v. Interactive Intell., Inc.*, No. 1:2014-cv-00169;

*Pragmatus Telecom, LLC v. LiveOps Inc.*, No. 1:2014-cv-00361; and

*Pragmatus Telecom, LLC v. TouchCommerce Inc.*, No. 1:2014-cv-00056.

Newegg and its undersigned counsel are unaware of any other actions now pending in this or any other court that may directly affect or be directly affected by this Court's decision in the present appeal.

## II.    STATEMENT OF THE ISSUES

Newegg's appeal raises two issues:

(1) Pragmatus moved to dismiss its patent infringement claims against Newegg after the claims were exhausted by bona fide license agreements with Newegg's suppliers of the accused products.  Did the district court properly find

that Newegg was not the prevailing party because the dismissal was based upon the exhaustion of Pragmatus' infringement claims?

(2) Whether Newegg's argument that it "prevailed" on claims other than those that were exhausted by the license agreements fails because the argument (i) was waived and (ii) is unsupported by record evidence.

## III.    <u>STATEMENT OF THE CASE</u>[1]

On December 12, 2012, Appellee Pragmatus Telecom LLC ("Pragmatus") filed this case against Appellant Newegg Inc. ("Newegg") in the Central District of California.    A1000-A1003.    The complaint alleged that Newegg infringed U.S. Patent Nos. 6,311,231 ("the '231 Patent"), 6,668,286 ("the '286 Patent") and 7,159,043 ("the '043 Patent") (collectively, "the patents-in-suit").    *Id.*

On August 19, 2013, by stipulation of the parties, the case was transferred to the District of Delaware.    A0016.

While the case was pending, Pragmatus licensed the patents to the two unlicensed providers of the accused Newegg technology – LivePerson and Moxie. A1956-A2049 (LivePerson); A1184-1217 (Moxie); A0003-A0007.    These licenses exhausted Pragmatus' infringement claims because there was no other unlicensed

---

[1]    Pursuant to Federal Rule of Appellate Procedure 28(b), Pragmatus has not included a jurisdictional statement because it is satisfied with what Newegg provided in its brief.

infringing activity by Newegg.  A1090 ("Pragmatus is informed and believes that the activities that are the basis of its infringement allegations against Newegg are now licensed.").

Pragmatus then moved to dismiss its case – with prejudice prior to the date of the dismissal and without prejudice after the date of the dismissal to account for the chance that Newegg may, in the future, make use of unlicensed infringing technology.  A1090-1091.  On February 12, 2014, the district court granted the unopposed motion to dismiss on the grounds that infringement had become licensed by the exhaustion of the patents.  A1093.

Newegg then moved for attorneys' fees under 35 U.S.C. § 285 and moved separately for costs under Federal Rule of Civil Procedure 54(d)(1) and District of Delaware Local Rule 54.1(a)(1).  A1127-A1156 (Motion for Fees); A1094-1126 (Motion for Costs).  On July 25, 2014, the district court denied Newegg's motions on the grounds that Newegg was not the prevailing party because "the unopposed motion to dismiss states that it is the result of a licensing agreement with Moxie Software, Inc. and LivePerson, Inc., the two companies that provide the live chat

software to Newegg." A0006. Newegg then appealed the denial of these motions. A0064.[2]

## IV.   STATEMENT OF FACTS

### A.   Statement of Actual Facts

The issues on appeal are narrow and there are very few facts that are relevant to this appeal. As discussed in the section below, however, Newegg seeks to inject pejorative rhetoric into this case to obscure the reality that it did not prevail on any claim or defense.

In early 2014, there were three pending litigations relevant to this appeal, all of which were pending in the District of Delaware: Pragmatus' infringement case against Newegg, and LivePerson and Moxie's respective declaratory judgment cases against Pragmatus. At that time, Pragmatus' infringement claims were based solely on Newegg's use of LivePerson and Moxie's "live chat" products.[3] Newegg did not identify any other potential accused products in its initial disclosures or in

---

[2] Since Pragmatus did not seek costs or fees as a prevailing party, the district court had no occasion to determine whether Pragmatus was, in fact, the prevailing party.

[3] Newegg also had a third provider of infringing live chat technology – Oracle – that was licensed before Pragmatus filed suit against Newegg. A1160-A1161. Accordingly, Pragmatus did not accuse Newegg's use of Oracle of infringement because such claims were exhausted.

CONFIDENTIAL MATERIAL OMITTED

its document production in response to Pragmatus' identification of accused instrumentalities.  A4006-A4011;[4] A4028-A4035.

Pragmatus settled its cases with LivePerson and Moxie while its case against Newegg was pending.  LivePerson [                                    ] for a license to the patents-in-suit and [                                    ].  A1956-A2049; A0003-A0007.   That  LivePerson  [



                                    ].  The  LivePerson  case  was  dismissed  on February 5, 2014 as a result of the settlement.  A4039-A4040.

Likewise,  Moxie  [                                    ]  for  its  license  to  the patents-in-suit, and [

---

[4] Specifically, Pragmatus set forth the following scope of accused products in Delaware:  "Pursuant to Paragraph 4(a) of the Default Standard for Discovery, Pragmatus hereby initially identifies the following accused for each of the patents-in-suit. . . .  Newegg:  all live chat and live help products and services made, used or sold from 2006 to the present, including, but not limited to, those supplied by LivePerson and Moxie."  In response Newegg was required to produce documents concerning the accused instrumentalities.  A4020-A4023.  Newegg did not, however, produce any documents that would indicate a potential accused product other than those supplied by LivePerson and Moxie.

CONFIDENTIAL MATERIAL OMITTED

].  A1184-1217 (Moxie); A0003-A0007.  The Moxie case was dismissed on February 4, 2014 as a result of the settlement.  A4041-A4042.

At this point – during the first week of February 2014, Pragmatus sought to dismiss its case against Newegg because all claims and counterclaims were exhausted or moot.  A1090-1092.  Newegg did not oppose.  *Id.*  The district court granted the dismissal – with prejudice through the date of the dismissal and without prejudice for any claims that may accrue thereafter.  A1093.

At the time the case was dismissed there had been no substantive ruling and there was still eight months left before the close of fact discovery.  A0023 (fact discovery was set to close on September 19, 2014).

Newegg then moved for attorneys' fees under 35 U.S.C. § 285 and moved separately for costs under Federal Rule of Civil Procedure 54(d)(1) and Local Rule 54.1(a)(1).  A1127-A1156 (Motion for Fees); A1094-1126 (Motion for Costs).  Pragmatus opposed Newegg's motions, contending that Newegg was not a prevailing party because the dismissal was unrelated to the merits of Pragmatus' claims but instead was required by the exhaustion of Pragmatus' claims resulting from the licenses to the patents-in-suit taken by Pragmatus' suppliers of the accused technology.  A2076.  The district court agreed with Pragmatus, concluding that "it cannot be correct that a party can benefit from a bona fide license agreement, obtained after the litigation began, and claim to be a prevailing party,

without a single substantial court decision that favors that party." A0007. The

district court went on to explain that if anyone should be considered a prevailing

party, it is Pragmatus:

> Here, Pragmatus licensed the suppliers of the technology, which led to downstream licensures for the users, i.e., Newegg. Dismissal for a license obtained by a third party that protected Newegg does not settle a dispute in favor of Newegg. It is hard to see how it is any different in terms of prevailing party analysis than if Newegg had paid for the license itself. If there were a prevailing party, it would seem that it would more likely be Pragmatus, as Pragmatus filed suit because it believed that its patent was infringed, and as a result, in part because of the suit, Pragmatus was able to negotiate a license covering potential infringement of its asserted patent.

A0007.

Newegg then appealed the district court's denial of its requests for fees and

costs. A0064. In its appeal, Newegg argues for the first time that it was the

prevailing party based upon some purportedly "potential" un-accused and

unlicensed licensed claims. It failed to bring such an argument below. A1151-

A1152 (Newegg's opening brief on fees); A2092-A2093 (Newegg's reply brief on

fees); A2146-A2198 (oral argument).

### B. Statement Regarding Newegg's Purported Facts That Are Untrue, Unsupported, Unfounded and/or Not of Record and Introduced for the First Time on Appeal

Rather than stick to facts that are relevant to this appeal, Newegg spends

much of its brief trying to impugn Pragmatus without justification, apparently

because Newegg believes patent holders should not be able to enforce their

property rights.  Pragmatus reluctantly responds to this litany of accusations by Newegg, none of which are relevant to the issues on appeal, because they are untrue, not of record, and/or introduced for the first time on appeal.

Newegg claims as a matter of "fact" that Pragmatus' suit against it was baseless.  Br. at 9-13.  While completely irrelevant to the issues on appeal, Newegg's assertion is demonstrably wrong.  Neither the district court, nor any other court, found that Pragmatus' claims lack merit.  Moreover, when Newegg tried to explain to the district court why it did not infringe during oral argument (1) the district court highlighted how Newegg's non-infringement defense was not supported by admissible evidence and (2) the district court's clerk proved one of Newegg's non-infringement theories to be wrong during the hearing live in the courtroom.  Specifically, while Newegg was making its presentation on why it believed it did not infringe, the district court questioned whether there was the admissible evidence of non-infringement.   Meanwhile, the court's law clerk had gone online to check to see whether the non-infringement argument was even viable (it was not):

> MR. BREAN [Counsel for Newegg]:
> So, if you look at the first screen shot of the second page of the handout that I gave, one of the key elements of the independent claims in this case has to do with the user sending a help request that identifies a contact channel through which the user of that customer computer can be reached.

Now if we look here at what Pragmatus is identifying, they are pointing to the portion of this screen shot that that [sic] says contact us, and there are a bunch of links below that.

One is a chat with us, e-mail us, call us, write to us.

Now, all of these are – the "us" I'll refer to as Newegg.

Chat with us, we put you in contact with Newegg, e-mails us, we'll give you Newegg's e-mail address, call us, well [sic] give you a phone number, and write us, we'll give you a physical mailing address.

The claim language very plainly says that this message has to identify channel though which the user of the customer terminal or customer computer can be reached, and that is simply not here.  Not by any stretch of the imagination.

Newegg is merely displaying ways that users can contact them, is fundamentally contrary to what they claim says and what the patent envisions.

\* \* \*

THE COURT:

Hold on a minute.

***So, is there a declaration or something else that goes with this – what you're saying to – how do I know what it is that happens when you click on chat with us?***

MR. BREAN:

Well, your Honor, again, our approach was to take these infringement contentions at face value.

\* \* \*

THE COURT:

Hold on a second.

(Pause)

My law clerk informs me he doesn't find your argument interesting enough to be listened to, so, instead, he's chatting on [Newegg's] website.

***He says it doesn't – he says when you click on one of these things, you click on another thing, and you get something saying provide your phone number***.

MR. BREAN:

Your Honor, that may be the case.

A2160-A2162 (Motion Hearing Transcript at 15:3-17:13) (emphasis added).

9

CONFIDENTIAL MATERIAL OMITTED

After being proved wrong by the district court's clerk at oral argument, Newegg trots out the same non-infringement argument on appeal while making no mention of the clerk having proved Newegg wrong in open court. Br. at 10-11. Moreover, *none* of Newegg's non-infringement arguments that were presented to the district court or on appeal are based upon admissible evidence, as the district court highlighted with its question above. *See* Br. at 9-13. There is no record evidence of Newegg's purported non-infringement – it is just empty attorney argument.

If any "finding" was made as to Newegg's non-infringement defense, it was that its non-infringement position failed as demonstrated by the clerk live in the courtroom. It is also worth noting that while Newegg was accused of infringement by virtue of its use of both Moxie and LivePerson technology, Newegg made no effort in the district court or on appeal to show why its use of LivePerson technology did not infringe. A1130-A1155 (Newegg's opening brief on fees); A2088-A2102 (Newegg's reply brief on fees). And Newegg does not explain why LivePerson [

] if the patents-in-suit clearly were not infringed. A1956-A2049.

In one sentence, Newegg proclaims as "fact" that the patents-in-suit are invalid. Br. at 12-13. Again, while this is irrelevant to the issues on appeal, it is

also unproven and belied by arguments that Pragmatus made to the district court. A1942-A1943.

With no grounds to claim that Pragmatus' case was baseless, Newegg then argues as "factual background" that the case was brought in bad faith. Br. at 13-16. This is also both irrelevant and untrue.

In support of its argument, Newegg asserts that "[a]ll of Pragmatus's lawsuits have been settled for far less than the cost of litigation defense for each defendant . . . ." Br. at 13. But there is no record evidence that this is true, and it is far from clear that Moxie and LivePerson paid "far less than the cost of litigation defense." A1956-A2049 (LivePerson); A1184-1217 (Moxie); A0003-A0007. Even assuming that some or all of Pragmatus' settlements were for less than the cost of the exorbitant fees that Newegg apparently pays its lawyers, there is also no showing by Newegg that any of the settlements are for less than the full value of *the infringement claims themselves*.

Newegg advances the incorrect theory that if the value of a defendant's use of a patent is less than the defendant's cost of defense, a patent owner must either: (1) give the infringer a free license (by not suing the infringer) or (2) force the infringer to go to trial on the infringement case (or at least spend more on a license than it would cost to fully litigate the case), even if the infringer would prefer the certainty and reduced cost of settlement over the higher cost and risk of trial.

11

Parties in all types of cases settle for less than the full value of their claims and less than the full cost of prosecution or defense all of the time and for a variety of reasons. There is nothing wrong with this and indeed courts, including this one, actively promote settlement. The only evidence is that a number of parties settled for substantial sums. A1956-A2049 (LivePerson); A1184-1217 (Moxie); A0003-A0007. Indeed, the district found that there was "no evidence . . . that the licenses provided to Moxie and Liveperson were token licenses. Instead Pragmatus has provided *unopposed evidence* that each license was for a non-trivial payment." A0006-A0007 (emphasis added).

Newegg also implies that Pragmatus' initial opposition and later consent to Newegg's motion to transfer from the Central District of California to the District of Delaware somehow demonstrates something nefarious. Br. at 13-14. But Newegg has its principal place of business in the Central District of California, and if Newegg wanted its case to remain in that district it should have withdrawn its motion. A1000, A1071. Pragmatus could not have succeeded in having a case it brought in the Central District of California transferred to Delaware without Newegg's consent.

Newegg also complains that Pragmatus did not take more discovery. Br. at 14.[5] But Pragmatus took all the discovery it needed to determine what products it could accuse and Newegg was required to produce core technical documents concerning those products under the Default Standard for Discovery in Delaware. A4020-A4023. Pragmatus was also deep in settlement discussion with both LivePerson and Moxie, so there was no reason to take any more discovery than necessary, given there was still eight months left for fact discovery. A0023 (fact discovery was set to close on September 19, 2014).

Newegg also takes issue with Pragmatus filing suit against it and other end-users (i.e., the direct infringers) as opposed to only filing suit against its suppliers (i.e., the indirect infringers). *See, e.g.*, Br. at 14-16. But the fact that Newegg is a direct infringer does not absolve it from infringement. *See* 35 U.S.C. § 271(a) ("***whoever*** without authority makes, ***uses***, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent") (emphasis added). Rather, it means that Newegg is liable regardless of scienter – which is a principle distinction between direct and indirect infringement. This "argument" by Newegg that it couches as a "fact of the case" is wholly irrelevant to any issue in

---

[5] It is surprising that Newegg is complaining that Pragmatus should have taken more discovery of Newegg and caused Newegg to incur more fees and costs.

this case because lawsuits against direct infringers are specifically sanctioned by the Patent Act.

Finally, for the very first time on appeal, Newegg argues that it "prevailed" on infringement claims of un-accused products that it identifies as www.neweggbusiness.com and "other internally-developed or internally-used pertinent functionality." *See, e.g.*, Br. at 3, 16.[6] There is no record evidence, much less admissible evidence, of these purported products. In fact, Newegg's brief on appeal is the first time Pragmatus has even learned of these purported products. There is no showing in the record that any of these purported products (1) could rightfully have been accused by Pragmatus (had it known about them); (2) are even owned or used by Newegg (because there is no showing that Newegg owns www.neweggbusiness.com); (3) were licensed by Newegg from an unlicensed supplier; or (4) were even used during the pendency of Pragmatus' suit against

---

[6] If these products actually existed, Newegg was under a duty to disclose them in the district court certainly during briefing on Newegg's motions for fees and costs, which it did not. *See, e.g.*, *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1208 (Fed. Cir. 2013). Newegg was also under an obligation to disclose these purported products during discovery in Delaware. A4020-A4023. Pragmatus identified the scope of potentially accused products on October 28, 2013, pursuant to Pursuant to Paragraph 4(a) of the Default Standard for Discovery in the District of Delaware. A4006-A4011. Thereafter, Newegg was to produce core technical documents concerning the range of products identified by Pragmatus. A4020-A4023. Newegg did not produce documents regarding www.neweggbusiness.com or any other system to which it now obliquely refers on appeal.

Newegg.  Newegg does not even identify the mysterious "internally-developed or internally-used" products.

Though not required – because www.neweggbusiness.com was not part of the record below – Pragmatus has confirmed that this website ***is not even owned or operated by Newegg Inc. the defendant in this case***.  A4043-A4048.  It is owned and operated by a separate company Newegg Business Inc.:

Policy & Agreement  |  Privacy Policy   © 2000-2014 Newegg Business Inc. All rights reserved.

A4043-A4048.  Thus, not only has Newegg Inc. tried to say it prevailed on a potential infringement claim for the first time on appeal, it affirmatively misrepresents that it even owns and operates the website it asserts that Pragmatus "might" have accused of infringement.  *Id.*

Tellingly, when Pragmatus advised the district court that all infringing activity had been exhausted, Newegg did not deny it.  A0005-A0007; A1944.  Nor did Newegg explain how the licenses to its suppliers could have failed to exhaust the patents against Newegg.  Based on this record, the district court then made an express finding in its order that the motion was granted because all infringement had been exhausted by the licenses to Moxie and LivePerson, to which Newegg interposed no objection.  A0006 ("Furthermore, unlike in *Highway Equip.*, where there was no reason given for the motion to dismiss, here the unopposed motion to

dismiss states that it is a result of a licensing agreement with Moxie Software, Inc. and LivePerson, Inc., the two companies that provide the live chat software to Newegg.").

To make these new arguments about purported products that are not of record is both improper and an attempt to sandbag on appeal Pragmatus and the district court, neither of whom was ever apprised of these purported products. But, as discussed above, the only purported product that Newegg specifically identifies, is not even owned and operated by Newegg Inc. – the only named defendant in this case. These arguments are also designed to divert this Court's attention from the only true issue on appeal – whether Newegg can somehow be a prevailing party even though it did not prevail on a single issue and its suppliers paid significant sums to license the patents-in-suit for Newegg's and other users' benefit.

## V.    <u>SUMMARY OF THE ARGUMENT</u>

A litigant must have obtained a "judicially sanctioned change in the relationship of the parties" to be a prevailing party. But the change in the relationship of the parties here, namely Newegg's freedom from suit on the patents-in-suit, did not result from the dismissal with prejudice. Rather, the change in the relationship happened *before* the dismissal with prejudice, when Newegg's suppliers licensed the patents-in-suit from Pragmatus. The license changed the relationship between Newegg and Pragmatus by exhausting the patents-in-suit

16

against Newegg.  Newegg's relationship with Pragmatus would have been just as changed whether this lawsuit was dismissed without prejudice, with prejudice, or indeed had never been filed at all.  Put succinctly, the dismissal with prejudice was compelled by a prior change in the relationship between the parties.

Newegg's argument that as an accused user of patented technology, it is automatically a prevailing party when its suppliers license the patents is unsupported by Supreme Court, Federal Circuit, or any other precedent.  And the cases decided by the Supreme Court and Federal Circuit compel the conclusion that Newegg is not a prevailing party.  All of the cases finding a defendant a prevailing party as a result of a dismissal have done so because there had been some decision on the merits against the plaintiff, or the plaintiff demonstrably dropped the case because it lacked merit.  In other words, it is in fact the dismissal with prejudice that changed the relationship between the parties, not some prior event.

For the first time on appeal, Newegg argues that it prevailed on claims "other than" the infringement claims that became exhausted during the litigation.  This argument fails procedurally and substantively.  It fails procedurally because the argument was waived as the argument is predicated on matters that are (1) not in evidence, (2) not in the record on appeal and (3) played no part in the proceedings below.  It fails substantively because Newegg cannot show that it was

17

the prevailing party on some claim or defense – i.e., that the district court awarded it relief that is tantamount to a judgment in its favor.

Finally, Newegg's policy arguments fall flat. The rule that Newegg is seeking to create – that a dismissal with prejudice automatically confers prevailing status on a defendant – would lead to the absurd result where infringers are prevailing parties if the plaintiff succeeds in licensing the supplier of the infringing instrumentality. Such a rule is contrary to established precedent, is bad policy because infringers would be deemed prevailing parties, and would frustrate settlement in a large number of patent cases.

## VI. <u>ARGUMENT</u>

### A. <u>Standard of Review</u>

Pragmatus agrees that the standard for determining whether a party is a "prevailing party" is *de novo*.

### B. The District Court Properly Found That Newegg Was Not a "Prevailing Party" Because the Dismissal Resulted from Infringement Claims That Were <u>Exhausted by License Agreements with Newegg's Suppliers</u>

Newegg's position that it was the "prevailing party" is based upon the false premise that a dismissal with prejudice is necessarily a judicially sanctioned change in the relationship of the parties that confers "prevailing party" status on the opposing party. As discussed below, Newegg's argument runs counter to Supreme Court and Federal Circuit precedent that is directly on point. No case

supports the assertion that Newegg is the prevailing party. Rather, the cases show that Newegg is not a prevailing party because the change in the relationship between Pragmatus and Newegg happened *before* the dismissal with prejudice, when Newegg's suppliers licensed the patents-in-suit from Pragmatus. This was not a judicially sanctioned change because the licenses effectuated the change in relationship, not some action by the district court.

A party is deemed prevailing only if it achieves a "judicially sanctioned change in the relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 605 (2001). But a dismissal – whether voluntary or based upon a settlement – that is endorsed by the district court is not automatically a judicially sanctioned change in the relationship of the parties. *See, e.g.*, *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1321 (Fed. Cir. 2004) ("When the plaintiff voluntarily dismisses the lawsuit prior to the final judgment, it has been held that the defendant is not necessarily a prevailing party."); *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1312 (Fed. Cir. 2006) (holding that a defendant "cannot be a prevailing party if the case was resolved by settlement (not incorporated by judicial decree) prior to any relief on the merits").

In *Akers v. Nicholson*, this Court set forth the test for determining whether there has been a judicially sanctioned change in the relationship of the parties. 409

F.3d 1356 (Fed. Cir. 2005). The judicial action must effectively be a judgment in favor of the party based on the merits of the claim at issue:

> The *Buckhannon* case thus sets forth several standards to identify a prevailing party. Prevailing party status requires some judicial action that changes the legal relationship between the parties on the merits of the claim. ***In other words, to prevail, a party must have received a judicial imprimatur tantamount to a judgment in favor of that party on the merits of the original claim***. . . . ***That judicial action could take the form of a consent decree settling the claim in favor of the plaintiff, a judgment on the merits, or an award of damages***.

*Id.* at 1359 (emphasis supplied).   Newegg does not even mention, much less address *Akers* in its Brief.

In the present case, the dismissal with prejudice did not provide Newegg with a "judicial *imprimatur* tantamount to a judgment in favor [of Newegg]" on the merits of Pragmatus' infringement claims.   *Id.*   Indeed, the district court specifically held that it had not made a merits based decision and was not altering the relationship of the parties:

> [T]he unopposed motion to dismiss states that it is a result of a licensing agreement with Moxie Software, Inc. and LivePerson, Inc., the two companies that provide live chat software to Newegg. . . . The Supreme Court has made clear that there must be a dispute that was settled in favor of the party seeking to be declared the prevailing party that materially alters the legal relationship between the parties. Here, Pragmatus licensed the suppliers of the technology, which led to downstream licensures for the users, *i.e.*, Newegg.   Dismissal for a license obtained by a third party that protected Newegg does not settle a dispute in favor of Newegg.

A0006-A0007.

The district court therefore did not change the relationship of the parties. The licenses to Moxie and LivePerson changed the relationship of the parties. Moreover, that change in relationship occurred *before* the dismissal and was not judicially sanctioned.  Put another away, the dismissal gave Newegg no benefit that it had not already received from the exhaustive licenses its suppliers purchased from Pragmatus.  It was those licenses that freed Newegg from any liability for infringement of the patents-in-suit.  The dismissal was just a legal formality compelled by the exhaustion of the patents-in-suit vis-à-vis Newegg.

The dismissal was also granted without consideration of the merits of the infringement claims, just that they could no longer be maintained due to intervening events.  A0003-A0009.  Thus, the dismissal fails all aspects of the prevailing party inquiry and was "tantamount" to nothing more than the acknowledgement of the new fact that all infringing activity had become licensed. *Id.*

The Court also addressed how to determine whether a party is a "prevailing party" in *Shum* – yet another relevant case Newegg ignores.  *Shum v. Intel Corp.*, 629 F.3d 1360 (Fed. Cir. 2010).  *Shum* confirmed that this Court's "precedent requires that the [prevailing] party have received at least some relief on the merits. The relief must materially alter the legal relationship between the parties, by modifying one party's behavior in a way that 'directly benefits' the opposing

party." *Id.* at 1367.   Further, the plaintiff was not deemed to be the prevailing party even though he obtained certain relief he requested because that relief did not modify the defendants' behavior.   *Id.* at 1370 ("Further, given that defendants ultimately won on all of the state law claims and that Shum's limited victory on some inventorship claims did not modify defendants' behavior in a way that materially benefitted Shum, the district court did not abuse its discretion by awarding half of the costs associated with the first bench trial to defendants."). Here, similarly, the dismissal in this case did not modify Pragmatus' behavior in a way that benefitted Newegg.   Rather, the dismissal just confirmed the obvious – that Newegg's infringing acts had become licensed during the pendency of the case.  A0003-A0007.

Based on Supreme Court and Federal Circuit case law discussed above, Newegg's assertion that it is the prevailing party is incorrect.  Br. at 19-27.  First, Newegg argues the dismissal changed the legal relationship between Pragmatus and Newegg.  Br. at 20-23.  Not true.  The settlement agreements with Moxie and LivePerson changed the legal relationship between Pragmatus and Newegg, not the dismissal.  Moreover, to even make this argument, Newegg is forced to argue that the dismissal "is effectively the same as a consent decree."  Br. at 20.  But Newegg fails to explain how the dismissal in this case is anything like a consent decree.  Br. at 20-21.  This is because it is not.  Newegg's argument was rejected in *Exigent*

case. 442 F.3d at 1312 (holding that a defendant "cannot be a prevailing party if the case was resolved by settlement (not incorporated by judicial decree) prior to any relief on the merits"). Settlements and dismissals do not, in and of themselves, confer prevailing party status. *Inland Steel Co.*, 364 F.3d at 1321; *Exigent*, 442 F.3d at 1312.

Newegg's appeal relies heavily on *Highway Equipment*. Br. at 21-23; *Highway Equip. Co., Inc. v. FECO, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006). But this case is inapposite, and actually underscores why Newegg was not a prevailing party in this case. The dismissal with prejudice in *Highway Equipment* conferred prevailing party status because it contained a covenant not to sue. *Id.* at 1035. Moreover, the *Highway Equipment* court expressly held that the dismissal with prejudice itself was not sufficient to confer prevailing party status, negating Newegg's argument in this case. *Id.* at 1035-36 ("FECO's prevailing party status is not predicated on whether Highway Equipment filed a Rule 41(a)(2) motion to dismiss with prejudice at the outset but is sufficiently based on its having filed a covenant not to sue with the court to end the litigation, resulting in a dismissal with prejudice."). Here, there was no covenant not to sue. In fact, quite the opposite. The dismissal was with prejudice through the date of the dismissal (because there was no non-licensed infringing activity) and without prejudice after the date of the

dismissal (to account for any unlicensed infringement that might take place in the future). A1093.

Newegg's appeal also relies heavily on *Power Mosfet*. Br. at 21-23; *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396 (Fed. Cir. 2004). In *Power Mosfet*, the plaintiff dismissed one of the defendants (IR) with prejudice prior to judgment because "subsequent discovery had revealed that IR had 'not actually made any commercial sales of any accused products.'" *Id.* at 1403. The district court held that the defendant was not entitled to fees regardless of whether it was a prevailing party, but found that in any event it had not prevailed. *Id.* at 1416-17. This Court then affirmed the denial of attorneys' fees to IR, but reversed the district court's holding that IR was not a prevailing party because the underlying dismissal was in fact a "judgment on the merits." *Id*.

In stark contrast to the facts here, the plaintiff in *Power Mosfet* expressly stated that it was dismissing with prejudice *because IR did not infringe*. *Id.* at 1403. Thus, the dismissal with prejudice was merits based, since the plaintiff, admitted it was dismissing IR because it had no case. And, unlike the situation here, it was the dismissal with prejudice that changed the relationship between the plaintiff and IR. The *Power Mosfet* dismissal was not based on an earlier change in the relationship such as an exhausting license, as is the case here.

Finding no harbor for its position in the case law, Newegg argues that:

> Pragmatus received none of this requested relief, but instead walked away from the case empty handed. By contrast, Newegg received the core relief it was seeking – that 'Pragmatus take nothing by way of its Complaint.

Br. at 22-23. Pragmatus did in fact receive the "core relief" it was seeking – substantial remuneration for Newegg's infringement. A1002-1003. To the extent Newegg is saying that Pragmatus did not receive a judgment that the patents-in-suit were valid and infringed, that is true because Newegg's suppliers agreed to license the patents-in-suit before a decision on the merits could be reached. But more importantly, Newegg did not receive a judgment that it did not infringe or that the patents-in-suit were invalid. As the district court aptly noted, a defendant whose supplier paid to absolve it from infringement did not "prevail" on any claim or defense: "Dismissal for a license obtained by a third party that protected Newegg does not settle a dispute in favor of Newegg. It is hard to see how it is any different in terms of prevailing party analysis than if Newegg had paid for the license itself." A0007.

Newegg then argues that "Pragmatus's Dismissal with Prejudice Was Judicially Sanctioned." Br. 23-27. It is true that the district court authorized the dismissal. However, whether the district court authorized the dismissal is not relevant inquiry in determining whether there is a prevailing party; there must be a "judicially sanctioned ***change in the legal relationship of the parties***" and a

dismissal itself does not confer prevailing party status. *Buckhannon*, 532 U.S. at 605; *Highway Equip.*, 469 F.3d at 1035-36. Here, there was no change in the relationship of the parties based upon the dismissal.

As a subsidiary argument, Newegg argues that it is the prevailing party because Rule 41(a)(2) dismissals are court-ordered and discretionary, but this is wholly irrelevant. Br. at 24-25. The distinction between Rule 41(a)(1) and Rule 42(a)(2) dismissals is not germane to whether the dismissal changed the parties' relationship in a manner that was "tantamount to a judgment in favor of that party on the merits of the original claim." *Akers*, 409 F.3d at 1359. And here, the district court expressly found that the dismissal was not a judgment in favor of either party on the merits or otherwise. A0005-A0007.

Newegg's citation to the Eastern District of Virginia's decision in *Samsung* to support its "dismissal under Rule 41(a)(2) automatically confers prevailing party status" argument is erroneous. Br. at 25-27; *Samsung Elecs. Co. v. Rambus Inc.*, 440 F. Supp. 2d 495 (E.D. Va. July 18, 2006). First, this case is not binding on this Court and it runs counter to *Highway Equipment* (which held that dismissal under Rule 41(a)(2) does not by itself confer prevailing party status) and *Akers* (which held that the judicial action must be tantamount to a judgment on the merits). *Highway Equipment*, 469 F.3d at 1035-36; *Akers*, 409 F.3d at 1359.

Rule 41(a)(2) dismissals are only "closely analogous" to consent decrees in situations where the dismissals result from covenants not to sue. *See, e.g.*, *Highway Equip.*, 469 F.3d at 1035; *Samsung*, 440 F. Supp. 2d at 507. But they are not analogous at all when they are based upon licenses obtained during litigation that exhaust the asserted patents as here, and where the district court expressly finds that the dismissal is not based upon any merits determination and does not otherwise change the relationship of the parties through judicial action. A0005-A0007.

While Newegg tries to cast this appeal as presenting a complicated issue, it does not. The prior cases that Newegg ignores like *Akers*, *Shum*, and *Exigent*, as well as the cases it does cite but ignores their bases for decision (like *Highway Equipment* and *Inland Steel*), dictate the outcome. Because the district court did not change the relationship of Pragmatus and Newegg in a manner that is tantamount to a judgment in favor or Newegg, Newegg cannot be found to have "prevailed" in the district court. The only thing that changed the relationship of the parties was Pragmatus' settlements and license agreements with Moxie and LivePerson.

### C.    Newegg's Argument That It "Prevailed" on Claims Other Than Those That Were Exhausted Was <u>Waived and Is Not Supported by Any Evidence of Record</u>

The only dispute before the district court was whether Newegg was the prevailing party notwithstanding the fact that Newegg's infringing activity had become licensed during the litigation.  A1151-A1152 (Newegg's opening brief on fees); A1944 (Pragmatus' opposition); A2092-A2093 (Newegg's reply brief on fees); A2146-A2198 (oral argument).  This was the only dispute that was briefed and argued and the only dispute the district considered and ruled upon.  *Id.*; A0003-A0007.  The district court even specifically asked "do I have all the record you want me to have?"  A2193.  Both parties agreed the district court did.  *Id.*

But now, for the first time on appeal, Newegg argues that it somehow "prevailed" on claims *other than* those that were exhausted by the Moxie and LivePerson licenses.  Br. at 3, 16, 17, 23, 29-30, 33-34, 35.  This argument is made out of whole cloth and relies entirely on attorney argument about purported products and purported claims that are not of record.  *See, e.g.*, Br. at 29.[7]  If ever a party waived an argument, it is here.  At no point did Newegg ever assert that it

---

[7]  Specifically, Newegg argues "The dismissal encompassed any claims against internally-developed live chat functionality, as well as claims against websites other than www.newegg.com, any other aspects of Newegg's business that Pragmatus might have accused of infringement, or, indeed, any 'other claims' entirely unrelated to the patents."

28

"prevailed" on claims concerning products that were not accused of infringement or some other claims unrelated to infringement. Nor could it. There is no record evidence of any such claims.

When appellate arguments are predicated on matters that are (1) not in evidence, (2) not in the record on appeal and (3) played no part in the proceedings below, the arguments are waived. *See, e.g.*, *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1208 (Fed. Cir. 2013). Here, there is nothing in the record supporting Newegg's assertion it prevailed on infringement claims that Newegg contends that Pragmatus "might have had." Br. at 29.[8] Indeed, Newegg's sketchy allusions to potential claims against neweggbusiness.com (which it never previously identified) and "internally-developed live chat functionality" (which it also never previously identified) raise more questions than answers.

For example, there is no record evidence that, among other things, these purported products (1) actually exist(ed) or how they operate(d); (2) could have been accused; (3) are even owned or used by the defendant Newegg Inc. (because there is no showing that Newegg Inc. owns neweggbusines.com);[9] (4) were not

---

[8] Newegg's use of the wiggle word "might" underscores Newegg's lack of candor in its argument that it "prevailed" on infringement claims of unidentified products of which there is no record.

[9] Indeed, as it turns out, Newegg Inc. (the only defendant in this case) does not even own or operate www.neweggbusiness.com. A4043-A4048. Newegg

*Continued* . . .

licensed at the time of the dismissal; and (5) were not introduced *after* the dismissal and thus subject to a subsequent lawsuit (assuming these products are not licensed) because all infringement claims after the dismissal were expressly without prejudice (assuming they even exist outside of attorney argument). These purported products are not even specifically named or otherwise identified.

Thus, it cannot be said that Newegg prevailed on its claims, much less that there was "judicial *imprimatur* tantamount to a judgment in favor [of Newegg]" on these purported claims. *Akers*, 409 F.3d at 1359. It is also clear from the district court's order that no claims – other than those that were exhausted by the Moxie and LivePerson licenses – were even before the district court. A0003-A0007. Indeed, the dismissal order is expressly predicated on the exhausting licenses. The dismissal therefore did not change the relationship of the parties, much less materially alter the parties' relationship. Neither party ever identified any "other" claim that was purportedly adjudicated by the district court, on which Newegg could conceivably have prevailed.

---

*. . . continued*

Business Inc. – an entity that was not named as a defendant in this case – owns and operates www.neweggbusiness.com. *Id.* It is incredible that Newegg Inc. not only claims that it prevailed on an unstated infringement claim for www.neweggbusiness.com for the first time on appeal, but that it also misrepresents that it even owns and operates that website. *Id.* It is this kind of lack of candor that pervades Newegg's arguments.

There was no mention by Newegg in its briefing on this issue to the district court that it somehow prevailed on claims other than those that became licensed. Indeed, in Newegg's opening brief on attorneys' fees in the district court there is literally just one conclusory sentence that proclaims that Newegg is the prevailing party with a citation to the *Highway Equipment* case. A1151-A1152. Pragmatus argued in opposition that there was no judicially sanctioned change in the relationship of the parties because the dismissal was based upon the Moxie and LivePerson licenses. A1944. In reply, Newegg made two arguments, neither of which had anything to do with "prevailing" on claims other than those that had become exhausted. A2092-A2093. First, Newegg argued that "a dismissal with prejudice is undisputedly favorable relief that removes all liability from Newegg for any infringement of Pragmatus's patents." A2092. That is wrong. Second, Newegg argued that the dismissal contained a covenant not to sue and thus there was a judicially sanctioned change in the relationship of the parties. A2093. This second argument was so devoid of merit that Newegg did not advance it on appeal. In any event, Newegg's unsupported and now abandoned argument that the dismissal contained a covenant not to sue would not support Newegg's current argument that the district court's dismissal somehow changed the relationship of the parties with respect to "other" infringement claims and "other claims" that have literally never been identified.

Newegg's theory that it prevailed on claims other than those that became licensed was waived.

    **1.**    **Regardless of Whether Newegg's "Other Claims" Theory Was Waived, It Fails Substantively Due to Lack of Record Evidence and No Showing That the Prevailing Party Standard Was Met with Respect to These Imaginary Claims**

To prevail on appeal, Newegg has to show it was the prevailing party on *__some__* claim. But it has not done so other than its fictitious claims that it asserts Pragmatus "might" have had for which there is no record evidence. In the absence of proof that there was a claim, and further proof that the district court materially altered the parties relationship with respect to that claim, Newegg cannot be said to be the prevailing party under the relevant standard.

As discussed above, in order to do that Newegg must show "judicially sanctioned change in the relationship of the parties." *Buckhannon*, 532 U.S. at 605. And to show that such a changed occurred, Newegg must show that it "received a judicial *imprimatur* tantamount to a judgment in favor of that party on the merits of the original claim" – i.e., Pragmatus' infringement claims. *Akers*, 409 F.3d at 1359. The infringement claims that became licensed do not meet this criteria for the reasons previously discussed. Furthermore, the "other" claims that Newegg advances for the first time on appeal do not meet this criteria because there is no record evidence that such claims even existed. Rather, the only record

evidence is that the only claims that ever existed between Pragmatus and Newegg were exhausted by licenses.  A1956-A2049 (LivePerson); A1184-1217 (Moxie); A0003-A0007.  And the district court properly made this finding based upon the evidence of the *only* claims before it.  A0003-A0007.

Essentially Newegg is arguing that the dismissal changed the legal relationship between Newegg and Pragmatus as to claims (if they exist at all) that neither Newegg nor the district court even know existed.  With no evidence that any other claims existed, much less that the district court or even Pragmatus knew about them, it cannot be said that there was a judicially sanctioned change in the relationship of the parties in a way that is tantamount to a judgment in favor of Newegg on the merits of these phantom claims.

This raises another practical issue.  If Newegg is found to have "prevailed" on claims for which there is no record evidence of their existence, any party that is dismissed could claim it "prevailed" on claims that were never at issue or even known to the plaintiff or the district court.  This is not the law and Newegg's argument for such a radical shift in the law lacks any merit.

### D.    Newegg's Argument That Pragmatus Did Not Have to Concede Exhaustion (Br. at 35) Is Incorrect and Belied by Record Evidence and the District Court's Finding

In another one of its arguments that uses wiggle language and eschews actual record evidence, Newegg argues:  "Although Pragmatus *could potentially*

have disputed its licenses to Moxie and LivePerson extinguished any infringement by Newegg, Pragmatus immediately conceded the point and offered to dismiss Newegg based on the licenses." Br. at 35. This argument lacks all credibility and is contradicted by record evidence and the district court's ruling.

Indeed, the licenses not only covered Moxie and LivePerson, they also covered the customers (like Newegg) of these companies products. A0007 ("Here, Pragmatus licensed the suppliers of the technology which led to downstream licensures for the users, i.e., Newegg."); *see, e.g.*, *Quanta Computer, Inc. v. LG Elecs. Inc.*, 553 U.S. 617, 625-28 (2008). Based upon the only evidence before it, the district court found the Moxie and LivePerson licenses covered Newegg's infringement. A0003-A0007. Finally, despite making its "could potentially" argument, Newegg does not take the position that exhaustion did not result from the Moxie and LivePerson licenses, nor could it. Nor does Newegg even explain the legal or factual basis of this "potential argument" that licenses to Newegg's suppliers did not exhaust the patents asserted against Newegg. This is yet another example of Newegg lacking candor in arguments that it is advancing for the first time on appeal. To the extent Newegg is advancing the argument, it was also waived.

### E.    Newegg's Other Arguments (Br. at 27-35) Lack Merit

Newegg argues that merits determinations in the pending litigation are not required for prevailing party status.  Br. at 27-30.  But the district court did not hold a merits determination was necessarily required.  Rather, it held that "[t]he Supreme Court has made clear that there must be a dispute that was settled in favor of the party seeking to be declared the prevailing party that materially alters the legal relationship between the parties."  A0007.  The district court then held that no such altering of the legal relationship of the parties had occurred through judicial action.  *Id.*  This is perfectly consistent with the Supreme Court's decision in *Buckhannon* and this Court's decision in *Akers*, among other cases.  *Buckhannon*, 532 U.S. at 605; *Akers*, 409 F.3d at 1359.  The district court properly applied controlling law.

Newegg then argues that third party conduct can make a litigant a prevailing party.  Br. at 31-33.  But this argument is irrelevant to whether the district court properly found that Newegg was not the prevailing party when Pragmatus moved to dismiss its infringement claims after the claims were exhausted by bona fide license agreements.  And this issue is resolved by applying *Buckhannon*, *Akers*, *Shum* and other relevant authority.  *Buckhannon*, 532 U.S. at 605; *Akers*, 409 F.3d at 1359; *Shum*, 629 F.3d at 1370.  There was certainly no third party agency or tribunal whose action altered the relationship of the parties in a way that is

tantamount to a merits-based decision in favor of Newegg as in the *Inland Steel* case; the only case Newegg cites in this section of its brief. Br. at 33. If anything, the exact opposite is true because suppliers paid to license Newegg, which would make Pragmatus the prevailing party, if any party were. A1956-A2049 (LivePerson); A1184-1217 (Moxie); A0003-A0007.

Finally, Newegg chides the district court's decision because it "emphasized" that there was no merits based dismissal. Br. at 34-35. But such a determination is entirely proper. *Akers*, 409 F.3d at 1359. Regardless, the district court's decision was principally based on the that fact that neither it nor any other agency or tribunal had altered the relationship of the parties in a manner that was tantamount to a decision in favor of Newegg – which is the correct standard for determining whether a party is a "prevailing party." A0003-A0007.

### F. Contrary to Newegg's Assertion, Public Policy Supports a Finding That Newegg Has Not Prevailed Because Such a Finding Would Deter Settlement and Licensing of Suppliers

Newegg's final argument is that "deeming Newegg the prevailing party promotes sound public policy." Br. at 36-40. Policy arguments are irrelevant to this appeal because the binding authority requires affirming the district court's decision. However, if policy concerns are considered, public policy favors finding that Newegg is not a prevailing party.

It is axiomatic that settlement is the preferred mechanism for dispute resolution. *See*, *e.g.*, *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988) ("The law strongly favor settlement of litigation . . . . 'Settlement is of particular value in patent litigation, the nature of which is often inordinately complex and time consuming.'") (citations omitted). But Newegg's position that a dismissal with prejudice automatically confers prevailing party status discourages settlement with, and licensing of, suppliers of patent infringement defendants.

Consider the following scenario. A-Co. sues B-Co. (its arch competitor) because B-Co. has introduced a product with a functionality that infringes A-Co.'s patents. During discovery litigation, A-Co. discovers that C-Co. (the supplier) provides the infringing component. Under Newegg's argument for changing the law, A-Co. cannot license C-Co. without B-Co. (the rival competitor) being deemed the prevailing party even though B-Co. was infringing. B-Co. would even be the prevailing party under this scenario even if it were willfully infringing, for instance because it contracted C-Co. to provide the infringing component with knowledge of the patents and a desire to practice them without paying for a license. The same would be true in the case where there is co-pending litigation against customers (the direct infringers) and the suppliers (the indirect infringers). Such outcomes make no sense and do not promote any sound public policy because infringers could be deemed prevailing parties by virtue of the mere fact that some

other party was generous enough to absolve the infringer of liability by paying for a license.

Newegg's arguments would also yield the following absurd result. Assume a patent infringement plaintiff reaches an agreement with the corporate parent of the defendant. And further assume that that corporate parent pays the plaintiff for a license that covers it and its subsidiaries, including the defendant. Under Newegg's theory of prevailing party law, the defendant would be the prevailing party because someone else (its corporate parent) obtained a license for it and the plaintiff subsequently dismissed because its infringement claims were exhausted. Examples like these are the reason that a rule where the non-dismissing party is automatically the prevailing party has been rejected. *Akers*, 409 F.3d at 1359.

Newegg's policy arguments fall flat. Its principal argument is that the prevailing party analysis should be clear and straightforward and not difficult to discern. Br. at 36-39. But the tests set forth by the Supreme Court in *Buckhannon* and this Court in *Akers* (a case Newegg ignores) are clear – the dismissal needs to have altered or resulted from a prior alteration in the parties relationship that is tantamount to a judgment on the merits. In virtually all instances, this is not difficult to discern and Newegg has not shown an instance where this inquiry is somehow tricky. Moreover, the rule that Newegg is advocating for, while very

bright-lined, leads to the result where actual willful infringers become prevailing parties. Under no circumstance is that sound public policy.

Newegg also argues that in the absence of what it deems a "straightforward rule to deal with situations such as this case and pronounce defendants like Newegg prevailing parties, district courts will needlessly waste time and resources on what should be an easy determination." Br. at 37. But Newegg's "time and resources" argument fails if this Court definitely holds that exhaustion based upon a license agreement with a supplier does not confer prevailing party status on the customer. That is a bright-lined rule that is supported by prior case law which would be very easy to apply going forward and not lead to the absurd result where infringers are deemed prevailing parties as discussed above.

Newegg's final purported policy argument is built upon assumptions and untrue statements about Pragmatus of which there is no record. Br. at 40. Newegg says that "[i]f Newegg is not deemed the prevailing party in this case, it would set a precedent such that abusive plaintiffs could shield any misconduct from the reach of 285 and Rule 54 by simply dismissing their cases with prejudice." Br. at 40. That is not the state of the law because certain dismissals with prejudice do confer prevailing status. In fact most do. It is just those dismissals that do not change the legal relationship of the parties that do not confer prevailing party status. Contrary to Newegg's conclusory arguments, finding that

Newegg is the prevailing party would set a terrible precedent – one where an infringer is deemed a prevailing party as demonstrated in the courtroom by the district court's clerk.  A2160-A2162 (Motion Hearing Transcript at 15:3-17:13).

## VII.  CONCLUSION

For at least these reasons, the district court's finding that Newegg was not a prevailing party should be affirmed.

Dated:  December 11, 2014                 Respectfully submitted,

                                          */s/ Thomas R. Burns, Jr.*
                                          Thomas R. Burns, Jr.
                                          ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
                                          1133 Connecticut Ave., NW, 12th Floor
                                          Washington, DC 20036
                                          burns@adduci.com
                                          Telephone:  202.467.6300
                                          Facsimile:   202.466.2006

                                          Ian Feinberg
                                          Elizabeth Day
                                          Clayton Thompson
                                          Marc Belloli
                                          FEINBERG DAY ALBERTI &
                                              THOMPSON, LLP
                                          1600 El Camino Real, Suite 280
                                          Menlo Park, CA 94025
                                          Telephone:  650.618.4360

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **NONCONFIDENTIAL BRIEF OF PLAINTIFF-APPELLEE PRAGMATUS TELECOM LLC** was served to the parties, in the manner indicated below, this 11th day of December 2014:

**COUNSEL FOR DEFENDANT-APPELLANT NEWEGG INC.**

Kent E. Baldauf, Jr.            ☒ **CM/ECF DELIVERY**
Daniel H. Brean
Christian D. Ehret             ☐ **VIA FIRST CLASS MAIL**
THE WEBB LAW FIRM
Suite 1200
One Gateway Center
420 Ft. Duquesne Boulevard
Pittsburgh, PA 15222


Dominick T. Gattuso        ☒ **CM/ECF DELIVERY**
PROCTOR HEYMAN LLP
Suite 200                   ☐ **VIA FIRST CLASS MAIL**
300 Delaware Avenue
Wilmington, DE 19801


Richard Gregory Frenkel      ☒ **CM/ECF DELIVERY**
LATHAM & WATKINS LLP
140 Scott Drive           ☐ **VIA FIRST CLASS MAIL**
Menlo Park, CA 94025


Edward R. Reines            ☒ **CM/ECF DELIVERY**
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway    ☐ **VIA FIRST CLASS MAIL**
Redwood Shores, CA 94065


*/s/ Thomas R. Burns, Jr.*
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel for Plaintiff-Appellee Pragmatus Telecom LLC, hereby certifies that, in compliance with Fed. R. App. P. 32(a)(7)(B)-(C), the body of the attached brief (including headings, footnotes, and quotations) is proportionally spaced, has a typeface of 14 point Times New Roman, was prepared using Microsoft Word, and contains 9,124 words.

Dated:  December 11, 2014

*/s/ Thomas R. Burns, Jr.*

Thomas R. Burns, Jr.
